IN THE CRIMINAL COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

JANUARY SESSION 1997



**FILED**

June 18, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 03C01-9607-CC-00259 |
| | ) | |
| vs. | ) | Bradley County |
| | ) | |
| **DAVID KEITH LANE,** | ) | Honorable R. Steven Bebb, Judge |
| | ) | |
| Appellant. | ) | (Statutory rape; official misconduct) |
| | ) | |

<u>For the Appellant</u>:

At trial:
**SCOTT KANAVOS**
166 N. Ocoee Street
Cleveland, TN 37364

On motion to rehear:
**ROBERT W. RITCHIE**
P.O. Box 1126
Knoxville, TN 37901-1126

On appeal:
**KENNETH F. IRVINE, JR.**
606 W. Main Street, Suite 350
P.O. Box 84
Knoxville, TN 37901-0084

<u>For the Appellee</u>:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**TIMOTHY F. BEHAN**
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

**JERRY N. ESTES**
District Attorney General
10th Judicial Circuit

**REBBLE JOHNSON**
Asst. District Attorney General
10th Judicial Circuit
P.O. Box 1351
Cleveland, TN 37364-1351

OPINION FILED: _____

**AFFIRMED**

**CURWOOD WITT, JUDGE**

## OPINION

The defendant, David Keith Lane, directly appeals from the sentencing determination of the Bradley County Criminal Court. He was indicted for three counts of statutory rape (Tenn. Code Ann. § 39-13-506) and three counts of unlawful exercise of official power (Tenn. Code Ann. § 39-16-402), all being Class E felonies. The trial court accepted guilty pleas on all counts, and after a sentencing hearing, the court sentenced the appellant as a standard (Range I) offender to a two-year sentence on each of the six counts. The three sentences for statutory rape were set to run concurrently, and the three sentences for official misconduct were likewise set to run concurrently; however, the effective two-year sentence for the statutory rape charges was set to run consecutively to the official misconduct sentence. The resulting effective aggregate sentence is four years to be served in the Tennessee Department of Correction. In this appeal, the defendant raises the following sentencing issues:

> (1) whether the trial court erred in applying certain enhancement factors;
>
> (2) whether the trial court erred in ordering consecutive sentencing; and
>
> (3) whether the trial court erred in failing to grant alternative sentencing.

After a thorough review of proceedings in the trial court and for the reasons explained below, the trial court's judgment is affirmed.

At the time the offenses were committed in 1994, the defendant was approximately 29 years of age. He held a 1993 degree in psychology. He was married and employed as a foster-care counselor by the Tennessee Department of Human Services (DHS). His caseload included a large number of clients who were young people with a wide range of problems. One of these clients was E.S.,[1] a

---

[1]
As a matter of policy, this court does not name minors who are victims of sexual abuse. See State v. Schimpf, 782 S.W.2d 186, 188 n.1 (Tenn. Crim. App.

sixteen-year-old female who came to DHS because of a number of personal problems, including substance abuse and conflicts with her mother, a single parent. While serving as DHS counselor for E.S., defendant engaged in sexual intercourse with her on five occasions. On two occasions he provided marijuana to E.S., and on other occasions he provided her with cigarettes. The victim testified at the sentencing hearing that she underwent sixty-one days of inpatient counseling after these episodes occurred, followed by additional counseling at Vanderbilt. She testified that the defendant's actions necessitated the counseling, at least in part. Her mother testified that since these episodes E.S. has difficulty sleeping and is afraid to trust anyone. She asserted that E.S. had looked to the defendant as a father figure in the absence of her real father. She stated that E.S. had drug-related problems prior to her sexual activity with the defendant.

The defendant's father testified that the defendant is gainfully employed with the father in Virginia, that the defendant is very remorseful and humiliated by his actions, and that the defendant is trying to hold together his family that includes his wife and young daughter. The defendant's wife testified that she was pregnant at the time of the defendant's sexual relationship with E.S. and that, at that time, he was under a lot of stress and was depressed. She acknowledged, however, her suspicion that defendant used marijuana. She stated that, at the time of the sentencing hearing, the defendant was receiving counseling.

The defendant testified at the sentencing hearing. He stated that at the time of the illicit relationship with E.S. he was stressed by financial pressures, his wife's physical problems, and a heavy caseload at DHS. He was drinking excessively. He said that E.S. had drug and alcohol problems and had a long history with DHS before being assigned to him in 1993. At some point he realized she was becoming infatuated with him. He testified that she initiated the sexual contact which began on August 9, 1994. He admitted that he knew on and before

1989).

3

this date that E.S. was in a vulnerable state. The defendant and E.S. first had sexual relations in Knox County when the defendant transported E.S. to a runaway shelter in Knoxville.

The presentence report shows that a few weeks after the defendant delivered E.S. to the Knoxville shelter, she called him and stated she had run away from the foster care in Sevier County in which she had been placed. The defendant went to Sevier County late at night, picked her up in his car, and drove her to Hamilton County where they slept together at the house of one of his friends. During this last episode, the appellant twice gave marijuana to E.S. There are a total of five sexual encounters, the first one in Knox County, the next one in Hamilton County, and the last three in Bradley County in October, 1994. In addition to supplying the victim with marijuana, the defendant gave her cigarettes. After rumors of these activities led to official inquiries, the defendant admitted he had engaged in the sexual conduct.

All of the issues raised by the defendant pertain to the sentence imposed by the court below. When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review of the record with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. §40-35-401(d) (1990). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). "The burden of showing that the sentence is improper is upon the appellant." Id. In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely de novo. Id. If appellate review reflects the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

4

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §40-35-210(a), (b) (Supp. 1996); Tenn. Code Ann. §40-35-103(5) (1990); State v. Holland, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

I. Sentence Enhancement.

The sentencing range for each of the Class E felonies of which the appellant was convicted is one to two years. He was sentenced to the maximum of two years on each count and complains that these sentences are excessive. Specifically, he cites as error the trial court's reliance upon each of the following enhancement factors :

> (1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range.

> (4)   A victim of the offense was particularly vulnerable because of age or physical or mental disability.

> (15) The defendant abused a position of public or private  trust, or used a special  skill in a manner that significantly  facilitated the commission or the fulfillment of the offense.

Tenn Code Ann. § 40-35-114(1), (4), (15) (Supp. 1996).

The trial judge stated on the record that he relied upon the above

enhancement factors. As a mitigating factor, he relied upon the fact that the defendant cooperated with the investigating officer. The trial court supported its use of the various factors with findings of fact. Therefore, we review the trial court's sentence determination with a presumption of correctness.

### a. Enhancement factor (1).

In finding that the defendant had a previous history of criminal behavior, the trial court relied upon an expunged North Dakota felony theft conviction. The record reflects that the judgment of this conviction was entered in 1984 upon the defendant's guilty plea. The defendant was placed on probation for a period of five years. The order provided that, upon completion of probation, the defendant could apply to the North Dakota court to withdraw the plea, dissolve the judgment of conviction, and have the record expunged. The defendant took this action, and the North Dakota court dismissed the proceeding on March 4, 1993.

The state in its appellate brief concedes that the trial court should not have used the North Dakota conviction as evidence of a prior history of criminal convictions. However, the trial court viewed the plea as evidence supporting a finding of prior history of criminal behavior.[2] A previous history of criminal behavior may be shown by competent evidence of such behavior, even though the behavior did not result in any criminal conviction. Tenn. R. Evid. 404(b). A form of competent evidence in this regard is an admission of a party under Tennessee Rule of Evidence 803(1.2). A guilty plea, such as the one entered in the defendant's

---

[2] Defendant cites State v. Pete Fuqua, No. 01C01-9003-CC-00076 (Tenn. Crim. App., Nashville, April 26, 1991), perm. app. denied (Tenn. 1991), for the proposition that records of prior criminal charges which have been dismissed cannot serve to justify a finding of a history of criminal behavior. Pete Fuqua, slip. op. at 16. However, in Fuqua this court held that the record supported the trial judge's finding of a prior history of criminal behavior. We noted that such record included, in part, a criminal trespass conviction which was "dismissed" after the defendant had "made restitution and paid the court costs." Id.

North Dakota case, is such an admission; however, "[s]tatues may affect whether a particular statement is an evidentiary admission." Neil P. Cohen et al, Tennessee Law of Evidence § 803(1.2).10 (3rd ed. 1995). It is obvious from the record of the North Dakota conviction that the plea, the probation, the withdrawal of the plea, and the dismissal of the charges were governed by North Dakota statutes which allowed for dismissal of the case and expungement of the record upon successful completion of probation. These statutes have an application and effect similar to Tennessee's pretrial diversion under Tennessee Code Annotated sections 40-15-101 to-105.[3] In Pizzillo v. Pizzillo, 884 S.W.2d 749 (Tenn. App. 1994), the issue was the admissibility of inculpatory statements of a party that were contained in a memorandum of understanding that was filed in a pretrial diversion of a previous criminal proceeding. In Pizzillo, the court held that "records expunged following the successful completion of a pretrial diversion program cannot be used as judicial admissions or to impeach a person's credibility." Id. at 755. Based on Pizzillo the North Dakota guilty plea, even as an admission apart from the conviction, is not admissible as evidence of criminal behavior of the appellant.

13

b. Factor (4).

The trial court relied upon the particular vulnerability of the victim as an enhancement factor because "of her age, and because of her mental condition." In its brief the state concedes this factor is not applicable. The victim was sixteen years of age at the time the offenses were committed. Although there was proof that the victim was in need of counseling and other remedial assistance prior to

---

[3] Based upon the distinction made in Pizzillo v. Pizzillo, 884 S.W.2d 749, 755 (Tenn. App. 1994), between judicial diversion, Tenn. Code Ann. § 40-35-313 (Supp. 1996), and pretrial diversion, Tenn. Code Ann. § 40-15-101 to -105 (Supp. 1996), the North Dakota procedure was more akin to the Tennessee judicial diversion because, like our judicial diversion, a guilty plea is entered. However, this distinction has no impact on the issues now under review. Pizzillo, 884 S.W.2d at 755.

August 9, 1994, there is no proof she labored under a mental or physical disability. There is no contradiction that the sexual activity between the defendant and victim was consensual, and in some instances, it is clear that she initiated the activity. Based upon the record, the enhancement of the sentences through factor (4) is not justified. The enhancement factor is applicable in a sex-offense case when a victim, as a result of age or natural physical or mental limitations, is unable to resist the commission of the offense, to summon help, or to testify against the offender. State v. Hayes, 899 S.W.2d 175, 185 (Tenn. Crim. App. 1995). In the case before us, there are no such inabilities. See State v. Chad Douglas Poole, _____ S.W.2d _____ (No. 02-S-01-9607-CC-00064 (Tenn., at Jackson, May 12, 1997); State v. Adams, 864 S.W.2d 31, 35-36 (Tenn. 1993).

### c. Factor (15).

The trial court found that factor (15) applies because defendant abused a position of public or private trust. The enhancement factors enumerated in Tennessee Code Annotated section 40-35-114 are not applicable when they are "themselves essential elements of the offense." Tenn. Code Ann. § 40-35-114 (Supp. 1996). Three of defendant's convictions were based upon Code section 39-16-402 which, in part, provides:

> (a) A public servant commits an offense who, with intent to obtain a benefit or to harm another, intentionally or knowingly:
> (1) Commits an act relating to the servant's office or employment that constitutes an unauthorized exercise of official power;
> (2) Commits an act under color of office or employment that exceeds the servant's official power;
> (3) Refrains from performing a duty that is imposed by law or that is clearly inherent in the nature of the public servant's office or employment;
> (4) Violates a law relating to the public servant's office or employment; or
> (5) Receives any benefit not otherwise authorized by law.
> (b) For purposes of subdivision (a)(2), a public servant commits an act under color of office or employment who acts or purports to act in an official capacity or takes advantage of such actual or purported capacity.

8

Tenn. Code Ann. § 39-16-402 (1990). The abuse of a position of public trust is clearly an element of the offense as alleged in the indictment under section 39-16-402. As such, factor (15) is not available to enhance the sentences for the official misconduct convictions.[4] The factor is available to enhance the statutory rape sentences. In the sentencing hearing, however, the trial judge did not limit his consideration of factor (15) to the statutory rape cases.

### d. Application and weight of the factors.

The record supports the enhancement of the statutory rape sentences through factor (15). Even though the official misconduct sentences may not be enhanced by the use of this factor, and even though none of the sentences may be enhanced through the use of factor (4), we find that all of the sentences are enhanced through the use of factor (1). We hold that the use of factor (1) is proper and is entitled to significant weight, despite our conclusion, discussed in section I(a), supra, that the trial court should not have used the expunged North Dakota conviction as a basis for applying this factor.

Upon our de novo review we may consider any enhancement (or mitigating) factors supported by the record even if such factors were not relied upon by the trial court. State v. Adams, 864 S.W.2d 31, 34 (Tenn.1993). We readily discern from the record evidence of prior criminal behavior which was either confessed by the defendant or was not controverted. The defendant's guilty pleas in the case before us embrace three episodes of illicit sexual intercourse that occurred in October, 1994, in Bradley County. These episodes were preceded,

---

[4] Despite the state's invitation, we decline to consider whether the defendant, while acting under color of office or authority, may also have abused a private trust. There was evidence to support the defendant's role as a "father" figure, and this role may have had its origin in his personal, as opposed to his professional, relationship to the victim. However, this is a very subtle distinction, and the mental gymnastics required to sort it out are, we confess, too balletic for us to master!

however, by similar episodes which occurred in August, 1994, in Knox County and a few weeks later in Hamilton County. Furthermore, there is evidence that the defendant not only possessed and used marijuana but illegally distributed the controlled substance on two occasions to the minor victim. Also, the defendant contributed to the delinquency of this victim by surreptitiously removing her from Sevier County after she absconded from her lawful custodial placement. These actions demonstrate a previous history of criminal behavior that justifies the use of factor (1) to enhance the sentences in this case. After considering the record as a whole, together with all applicable enhancement factors and the mitigating factor, we hold that the enhancement of each sentence to the maximum of two years is appropriate. The trial court's determination in this regard, therefore, will not be disturbed.

II. Consecutive Sentencing.

The trial court based its consecutive sentencing determination upon Tennessee Code Annotated section 40-35-115(b)(5), which provides:

> (b) The court may order sentences to run consecutively if the court finds by a preponderance of the evidence that :
> . . .
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims.

Tenn. Code Ann. § 40-35-115(b)(5) (1990) (emphasis added). The circumstances which the court found to support its reliance on section 40-35-115(b)(5) are: (1) The time span between the offenses, although not great, is significant; (2) the relationship between the defendant and the victim was a special relationship; and (3) there was residual physical or mental damage to the victim.

The defendant relies upon Wilkerson, 905 S.W.2d 933. He contends the trial court did not find nor does the record support a finding that consecutive

10

sentences were necessary to protect the public from further criminal conduct of the defendant and that the aggregate length of the sentences is related to the severity of the offenses.  Indeed, the record contains no findings on either account.

It is not cogently clear, however,  that Wilkerson applies to any case other than one involving the sentencing of a dangerous offender under § 40-35-115(b)(4).  The opinion in Wilkerson may be fairly construed to apply only to consecutive sentencing of dangerous offenders.  It held that "the imposition of consecutive sentences on an offender found to be a dangerous offender requires, in addition to the application of the general principles of sentencing, the finding that an extended sentence is necessary to protect the public ... and that [it] must reasonably relate to the severity of the offenses committed."  Wilkerson, 905 S.W.2d at 939 (emphasis added).

Pre-Wilkerson law is equivocal on the issue of the non-statutory requirements applying to consecutive sentencing under section 40-35-115(b)(5). The genesis of the requirement that the trial court make a finding "that confinement for such a term is necessary in order to protect the public from further criminal conduct by the defendant" is Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976), but Gray is also a dangerous offender case.  It was reasonable to understand Gray to apply only to consecutive sentencing for dangerous offenders or otherwise only to the five categories of offenders for whom consecutive sentencing should be reserved under Gray.  When the supreme court added a consecutive sentencing category for offenders committing two or more offenses of sexual abuse to minors in State v. Taylor, 739 S.W.2d 227 (Tenn. 1987), it made no mention of the requirement that the trial court find that consecutive sentencing is necessary to protect the public (although it did indicate the trial court should bear "in mind the general objectives set forth in Gray".) Id. at 230. Taylor contributed the requirement that the aggregate of the consecutive sentences must be reasonably related to the severity of the offenses, but when the legislature codified the categories established

11

in Gray and Taylor, see Tenn. Code Ann. § 40-35-115(b)(1990), it made no mention of any requirement for the trial court to make either finding. But see Tenn. Code Ann. § 40-35-115, Sentencing Comm'n Comments (1990).

After the 1989 sentencing enactment, this court reviewed a number of cases in which consecutive sentences were ordered under section 40-35-115(b)(5), and essentially two different approaches emerged. In some cases, we indicated the trial court should have considered whether extended terms of confinement were necessary to protect the public and that such terms could be imposed only where this necessity was present. See State v. John James, No. 01C01-9601-CR-00016, slip op. at 15-17 (Tenn. Crim. App., Nashville, March 27, 1997); State v. Jernigan, 929 S.W.2d 391, 399 (Tenn. Crim. App.), perm. app. denied (Tenn. 1996); State v. Desirey, 909 S.W.2d 20 (Tenn. Crim. App.), perm. app. denied (Tenn. 1995) ; State v. Barry Woodcock, No. 01C01-9503-CC-00087, slip op. at 18-20, (Tenn. Crim. App., Nashville, December 15, 1995); State v. Edward Frank Henry, No. 01C01-9003-CC-00050, slip op. at 10-12 (Tenn. Crim. App., Nashville, November 29, 1990), affirmed in relevant part, 834 S.W.2d 273 (Tenn. 1992). (Woodcock was filed December 15, 1995, after Wilkerson, but did not refer to Wilkerson.) In other § 40-35-115(b)(5) cases, we affirmed consecutive sentencing if sufficient statutory aggravating circumstances were present, without referring to the requirements of Gray, Wilkerson, and Taylor that additional elements be present. See State v. David L. McClure, No. 01C01-9505-CR-00145, slip op. at 15-16 (Tenn. Crim. App., Nashville, April 30, 1997)[5]; State v. Charles David Castro, No. 01C01-9408-CC-00273 (Tenn. Crim. App., Nashville, April 13, 1995); State v. Perry Riley, No. 01C01-9201-CR-00040 (Tenn. Crim. App., Nashville, October 22, 1992), perm. app. denied (Tenn. 1993).

We note in passing that the Tennessee Criminal Sentencing Reform

---

[5] In David L. McClure, the time for filing an application for permission to appeal to the supreme court does not expire until 60 days after April 30, 1997. Tenn. R. Crim. P. 11(b).

Act of 1989 essentially captures the Taylor (and Wilkerson) requirement that the aggregate length of the sentence must reasonably relate to the severity of the crimes. One of the principles of the Act is to assure that defendants be punished "by the imposition of a sentence justly deserved in relation to the seriousness of the offense." Tenn. Code Ann. § 40-35-102(1) (Supp. 1996). Further, the Act provides that the "sentence imposed should be no greater than that deserved for the offense committed." Tenn. Code Ann. § 40-35-103(2) (1990). Trial courts which consider the principles of sentencing in their sentencing determinations, as they are required to do pursuant to Code section 40-35-210(b), automatically consider the factor announced in Taylor.

In our view, the consecutive sentencing in this case must be affirmed based upon either of two grounds. First, as noted above, we find no constraint that Wilkerson applies to the sentencing in this case. We note that the reason for the rule in Wilkerson, that consecutive sentencing be supported by a need to protect society from further criminal acts of the defendant, is not as evident in cases, such

13

as the one now before us, in which the established sentences are relatively short. The need to protect society has a rational connection to ordering the service of longer sentences in seriatim. However, where the aggregate time to be served in confinement does not vary significantly whether the sentences run concurrently or consecutively, the reason for the rule is less compelling.[6] In Taylor, the supreme court acknowledged that the formulaic regimen set forth in Gray was inadequate to deal with multiple cases of sexual abuse of a minor. Similarly, the rule of Wilkerson may be inapposite to the sentencing requirements for cases involving short sentences.

Further elucidation by the supreme court would be well-received, but if Wilkerson is not applicable to the case at bar, the presumption of correctness of the trial court's ruling is intact, and the consecutive sentencing is supported in the record. We agree with the trial court that the record supports the findings that (1) the relationship between the defendant and the victim, being an official relationship, was important; (2) the time span of the offenses, although short, was "significant"; and (3) mental damage to the victim, although not proven to be extensive, was established in the record. These facts support a finding that sufficient aggravating circumstances exist under section 40-35-115(b)(5).

The second ground supporting the consecutive sentencing in this case assumes the applicability of Wilkerson. Under this approach, in our de novo review of the trial court's action we first examine the relationship of the aggregate effective sentence to the severity of the offense committed. In view of the existence of a number of uncharged offenses, and given the fact that the sex offenses were

_____

[6]
The defendant in the case before us was sentenced as a standard (Range I) offender. The Release Eligibility Date for the effective four-year sentence is 7.2 months longer than the Release Eligibility Date for an effective sentence of two years. Tenn. Code Ann. § 40-35-501(c) (Supp. 1996).
In Barry Woodcock, slip op. at 1, the effective sentence is 18 years; in Jernigan, 929 S.W.2d at 393, 10 years; in Henry, 834 S.W.2d at 274, 50 years; and in Desirey, 909 S.W.2d at 23, 18 years.

exacerbated by the defendant furnishing a controlled substance to the juvenile victim, we hold the aggregate length of the sentences is reasonably related to the severity of these offenses.

Next, we must examine the record to determine if the extended terms of confinement are necessary to protect the public from further criminal conduct of the appellant. We are aware that a number of witnesses testified at the sentencing hearing, one of whom was the defendant. Furthermore:

> The trial court, as the trier of fact at sentencing hearings, has the opportunity to observe the manner and the demeanor of witnesses. Consequently, this court gives great weight to the determinations made by the trial court concerning the credibility of witnesses[.]

State v. Melvin, 913 S.W.2d 195, 202 (Tenn. Crim. App.), perm. app. denied (Tenn. 1995). We find that under the unique facts of this case, the assessment of credibility, particularly the credibility of the defendant, is critical in determining the necessity of protecting the public from further criminal acts of the defendant. The trial judge made no findings on these issues and did not reflect upon the need to protect the public, but in commenting upon the evidence at a hearing that was held upon the defendant's motion for a new sentencing hearing, the trial judge expressed his view that the defendant was more remorseful about what had happened to him than about what had happened to the victim.

Furthermore we are troubled that the defendant's testimony is not attentive to the issues of possessing, using, and distributing to a minor a controlled substance. The defendant's testimony evinces a lack of accountability for at least this aspect of his conduct. We hold that the lack of remorse and responsibility supports a finding that the limited[7] consecutive sentencing is necessary to protect the public from further criminal conduct of the defendant.

---

[7] We recognize that a more logical ordering of the sentences would have linked a statutory rape conviction with an official misconduct conviction to run concurrently. Had these three effective sentences of two years each been set to run consecutively, the aggregate sentence would have been six years.

Accordingly, the trial court's setting of consecutive sentences will not be disturbed.

### III. Alternative Sentencing.

The trial court's decision to deny alternative sentencing is stated in the record without elaboration except that the trial court refers to deterrence and to the North Dakota conviction (that was dissolved and expunged). No reference was made to the sentencing principles nor were there any other findings of fact. For these reasons, this aspect of the sentencing determination comes to us for de novo review, without the presumption of correctness.

Initially we note that, for the reasons stated in Section I of this opinion, neither the North Dakota conviction nor the underlying admission of theft may be considered for purposes of denial of alternative sentencing. Furthermore, the record is devoid of any proof of any particularized need for deterrence in the case before us, and for this reason, denial of alternative sentencing based on deterrence is not justified. State v. Zeoila, 928 S.W.2d 457, 461-62 (Tenn. Crim. App. 1996); State v. Bingham, 910 S.W. 2d 448, 455 (Tenn. Crim. App.), perm. app. denied (Tenn. 1995).

The defendant is clearly eligible for alternative sentencing in general, Tenn. Code Ann. §40-35-102(5), (6) (Supp. 1996), and he is eligible for probation as a particular alternative to confinement. Tenn. Code Ann. § 40-35-102(6) (Supp. 1996). The trial court is automatically required to consider probation as a "part of the sentencing determination at the conclusion of the sentencing hearing." Tenn. Code Ann. § 40-35-303(b) (Supp. 1996). The presumption of suitability for alternatives to confinement may be overcome by evidence to the contrary. Id. Although defendant is presumed to be a favorable candidate for alternative sentencing, the burden rests with the defendant to show suitability for probation as

16

a particular form of alternative sentencing. Id.; State v. Kyte, 874 S.W.2d 631, 633 (Tenn. Crim. App. 1993).

When the defendant has requested alternative sentencing, we look first to the presumption of favorable candidacy and to the presence or absence of evidence that would overcome the presumption. Our analysis includes the considerations enumerated in Tennessee Code Annotated sections 40-35-210(b) and 103(5). One of these considerations is the "nature and characteristics of the criminal conduct involved." Tenn. Code Ann. § 40-35-210(b)(4) (Supp. 1996); Ashby, 823 S.W.2d at 169. In addition, we utilize the considerations for ordering confinement that appear in Code section 40-35-103(1). One of these is semantically linked to the nature and circumstances of the offense. It is the consideration found in § 40-35-103(1)(B): Confinement may be ordered when it is "necessary to avoid depreciating the seriousness of the offense." Tenn. Code Ann. § 40-35-103(1)(B) (1990).

The nexus between the nature and circumstances of the offense and sentencing to avoid depreciating the seriousness of the offense is well recognized, State v. Hartley, 818 S.W.2d 370, 375 (Tenn. Crim. App. 1991). The nature and circumstances of the offense may serve as the sole basis for denying probation when they are "especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree; and it would have to be clear that, therefore, the nature of the offense, as committed, outweighed all other factors ... which might be favorable to a grant of probation." State v,. Travis, 622 S.W.2d 529, 534 (Tenn. 1981); see also State v. Cleavor, 691 S.W.2d 541, 543 (Tenn. 1985). "This standard has essentially been codified in the first part of T.C.A. Section 40-35-103(1)(B) which provides for confinement if it is necessary to avoid depreciating the seriousness of the offense." Hartley, 818 S.W.2d at 375. Thus, under the first clause of section 40-35-102(1)(B), the Travis qualifiers assist the court in determining when the need to avoid depreciating the seriousness of the

17

offense overcomes the presumption of suitability for alternative sentencing. While the statute speaks in terms of overcoming the presumption, sufficient contrary evidence, typically, also defeats the defendant's claim to alternative sentencing.

In the case now before us, the record shows ample evidence to overcome the presumption of suitability for alternative sentencing and to justify a denial of same. There were two uncharged incidents of statutory rape and at least four uncharged incidents of official misconduct, including, in addition to sexual intercourse between a DHS counselor and a juvenile girl who was placed in his care, two incidents when this counselor distributed illegal drugs to the child. We observe that this was a girl who was under DHS supervision in the beginning due to her involvement with controlled substances. The defendant provided marijuana to the victim while the victim was in flight from her custodial placement, that flight being facilitated late at night by the defendant. If, arguendo, none of the other Travis qualifiers can be said to apply, the nature and circumstances of the defendant's conduct toward the victim from August through October, 1994, are clearly reprehensible. We find that they outweigh all other factors favoring alternative sentencing and, therefore, confinement is necessary to avoid depreciating the seriousness of the offense. Furthermore, as we noted in the preceding section, a lack of remorse, State v. Pierson, 678 S.W.2d 905 (Tenn. 1984) and an unwillingness to accept responsibility for one's criminal conduct, State v. Andrew H. Leone, No. 02C01-9206-CR-00148, slip op. at 3 (Tenn. Crim. App., Jackson, September 9, 1993), may serve as grounds to deny probation, and the record reflects a basis for applying these factors. For these reasons, we hold that the trial court's denial of alternative sentencing will not be disturbed

IV. Conclusion.

The judgment of the trial court is affirmed.

18

_____
Curwood Witt, Judge


CONCUR:


_____
Gary R. Wade, Judge


_____
William M. Barker, Judge