IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

DECEMBER 1997 SESSION



**FILED**

**March 18, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

STATE OF TENNESSEE,                )
                                                           )
                    APPELLEE,            )
                                                           )        No. 01-C-01-9702-CR-00041
                                                           )
                                                           )        Putnam County
v.                                                        )
                                                           )        Leon Burns, Jr., Judge
                                                           )
                                                           )        (Sexual Battery)
CLARENCE JACKSON,              )
                                                           )
                    APPELLANT.        )


FOR THE APPELLANT:

H. Marshall Judd
Assistant Public Defender
215 Reagan Street
Cookeville, TN 38501

OF COUNSEL:

David N. Brady
District Public Defender
215 Reagan Street
Cookeville, TN 38501

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
425 Fifth Avenue, North
Nashville, TN 37243-0493

Georgia Blythe Felner
Counsel for the State
425 Fifth Avenue, North
Nashville, TN 37243-0493

William E. Gibson
District Attorney General
145 South Jefferson Avenue
Cookeville, TN 38501-3424

Lillie Ann Sells
Assistant District Attorney General
145 South Jefferson Avenue
Cookeville, TN 38501-3424


OPINION FILED:_____


AFFIRMED AS MODIFIED


Joe B. Jones, Presiding Judge

# O P I N I O N

The appellant, Clarence Jackson (defendant), was convicted of two (2) counts of sexual battery, a Class E felony, by a jury of his peers. The trial court, finding the defendant to be a standard offender, imposed a Range I sentence consisting of confinement for two (2) years in the Department of Correction in each count. The sentences were ordered to be served consecutively for an effective sentence of four (4) years. The defendant presents nine issues for review. However, this court finds there are only three issues presented for review. The defendant contends (a) the evidence is insufficient, as a matter of law, to support his convictions, (b) the trial court erred by admitting into evidence his statement to a law enforcement officer because it contained inadmissible hearsay, and (c) the sentences imposed by the trial court are excessive. After a thorough review of the record, the briefs submitted by the parties, and the law governing the issues presented for review, it is the opinion of this court that the two convictions for sexual battery should be affirmed. However, the sentences are modified. The sentences are to be served concurrently rather than consecutively.

The defendant married the victim's great-aunt, Mildred C. Gentry Jackson. Mrs. Jackson was the sister of the victim's grandfather, Benton Gentry. The Jacksons and the Gentrys were very close. The Jacksons, who lived in Dayton, Ohio, visited the Gentrys frequently. They always stayed with the Gentrys when visiting Tennessee. The two couples took vacations together. They attended social functions, family reunions, school reunions, and parties for childhood schoolmates and friends together.

The victim, who was twenty-nine (29) years of age, has suffered from Down's Syndrome since she was a child. A doctor testified she has the mind of a child between the ages of six and eight. She has been unable to work. The victim and her family lived next door to the victim's grandparents, the Gentrys. The victim visited the Gentrys almost daily by walking through a yard between the residences.

On May 7, 1990, the victim's great-grandmother, Mrs. Maxwell, died in Dayton, Ohio. A funeral service was held in Dayton. Mrs. Maxwell's remains were returned to Tennessee for burial. On May 13, 1990, the family came to the Gentrys' residence. Those

present gathered in the kitchen. The family members visited with each other. However, the victim went into the living room and began watching television. She sat on a love seat which could not be seen from the kitchen. Later, the defendant went into the living room and sat next to the victim.

The victim testified the defendant placed his hand inside of her pants and rubbed the vaginal area of her body. He then digitally penetrated her. He subsequently performed cunnilingus on her. The defendant referred to the victim's vaginal area as her "Tootsie." He unzipped his pants and placed the victim's hand on his reproductive organ. He also forced her to kiss him several times. During the course of these events, he asked the victim, "How you feel woman." He also asked her if she felt "like a woman."

The victim's younger brother observed a portion of what occurred on May 13, 1990. He saw the defendant jerk the victim's head between four and six times and force the victim to kiss him. He also saw the defendant place his hand inside the victim's pants.

In September of 1991, the Gentrys went to Dayton, Ohio, to meet the Jacksons. They then took a thirty-day vacation. The two couples subsequently returned to Dayton, and the Gentrys drove home. In a few days, the Jacksons came to Tennessee. As usual, they stayed with the Gentrys. The purpose of this visit was a party for several women who knew Mrs. Gentry and Mrs. Jackson in the formative years of their lives.

On Sunday, October 6, 1991, the victim, her parents, Benton Gentry, her grandfather, and the defendant, went to a football game. The victim's brother was a member of a team playing that day. The victim's parents and Mr. Gentry sat higher in the stands than the victim, who sat with the students. The defendant sat next to the victim. The victim removed her jacket and draped it over the lower portion of her body. The victim testified the defendant placed his hand under her jacket, went inside her pants, and touched her vaginal area. The victim's mother saw the victim remove her jacket and place it over the lower portion of her body.

A Putnam County deputy sheriff interviewed the defendant in Dayton, Ohio, on May 7, 1992. The defendant was apprised of the Miranda warnings. The deputy sheriff had a letter which contained the dates and events when the defendant was alleged to have sexually abused the victim. He did not read the entire letter. He simply advised the

3

defendant of the allegations. The defendant freely admitted having sexual contact with the victim. The contact included digital penetration, kissing the victim's breasts on two occasions, and touching the vaginal area of the victim's body. However, the defendant told the deputy it was the victim who initiated each sexual encounter. The defendant's son was present during the entire interview.

## I.

The defendant contends the evidence contained in the record is insufficient, as a matter of law, to support a finding by a rational trier of fact that he was guilty of two counts of sexual battery beyond a reasonable doubt. He argues the doctor who examined the victim "found no medical evidence of the victim's accusations," the victim was not competent to testify, and the victim during cross-examination accused another person, a schoolmate, of sexually abusing her. The State of Tennessee (state) contends the evidence is clearly sufficient to support the defendant's convictions.

Unfortunately, this issue has been waived. The defendant has failed to cite any authority to support his argument. Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. 10(b). Moreover, the arguments made in support of this issue are the conclusory statements set forth in the previous paragraph.

Nevertheless, this court has read the record to determine whether the evidence supports the two convictions and whether the victim was competent to testify. The record reveals defense counsel questioned the victim before she was permitted to testify, and the defendant did not interpose an objection to the competency of the victim This issue has been waived. Tenn. R. Evid. 103(a)(1); Tenn. R. App. P. 36(a). However, the record clearly establishes the victim was competent to testify. Furthermore, this court is of the opinion the evidence contained in the record is sufficient to support the defendant's convictions. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 278, 61 L.Ed.2d 560 (1979).

This issue is without merit.

4

## II.

The defendant contends the trial court committed error of prejudicial dimensions by permitting the entire statement he gave to a Putnam County Deputy Sheriff to be admitted into evidence. He argues the statement contains hearsay.

Unfortunately, this issue has been waived as well. The defendant has failed to cite authority to support his argument. Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. 10(b). Nevertheless, this court has considered this issue on the merits. Given the standard of appellate review in suppression matters, the evidence contained in the record does not preponderate against the trial court's findings of fact.

This issue is without merit.

## III.

The defendant challenges the length and the manner of serving the sentences imposed by the trial court. He argues the trial court erroneously applied three enhancement factors and failed to consider two mitigating factors. He also argues the trial court erroneously ordered his sentences to be served consecutively; and the trial court also erred by refusing to impose some form of alternative sentencing.

## A.

When an accused challenges the length and manner of serving sentences, it is the duty of this court to conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Furthermore, this presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are

5

predicated upon uncontroverted facts. State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App.), per. app. denied, (Tenn. 1994). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination is based upon the witnesses' demeanor and appearance when testifying. State v. Jernigan, 929 S.W.2d 391, 395 (Tenn. Crim. App.), per. app. denied (Tenn. 1996).

In conducting a de novo review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103 and -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App.), per. app. denied (Tenn. 1987).

When the accused is the appellant, the accused has the burden of establishing that the sentences imposed by the trial court are erroneous. Sentencing Commission Comments to Tenn. Code Ann. § 49-35-401; Ashby, 823 S.W.2d 169; State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994).

## B.

The trial court found the evidence supports four enhancement factors. The factors included (a) the defendant has a history of criminal behavior and convictions for the commission of criminal offenses, Tenn. Code Ann. § 40-35-114(1); (b) the victim was particularly vulnerable due to a mental deficiency, Tenn. Code Ann. § 40-35-114(4); (c) the defendant committed these offenses to gratify his desire for sexual pleasure, Tenn. Code Ann. § 40-35-114(7); and (d) the defendant abused a private trust, Tenn. Code Ann. § 40-35-114(15).

The defendant contends the trial court erred by using enhancement factors (4), (7) and (15) to enhance his sentence within the appropriate range.

6

**(1)**

The defendant argues enhancement factor (4), the victim was particularly vulnerable, should not have been used to enhance his sentence. He argues the evidence does not support this factor.

In this case, the victim was twenty-nine years of age. She had suffered from Down's Syndrome since she was a child. A doctor testified the victim had a mental age of six to eight years. The victim's stepfather testified the victim's mental age was between five and six years. The victim's brother saw the defendant molest the victim on one occasion. He stated the victim looked "scared." The victim alluded to the defendant's "very, very strong" hands. The trial court found the victim "was not able to respond in the same manner or way that maybe someone else might who did not have this mental condition."

This factor relates to the physical and mental physical limitations of the victim rather than mere age. State v. Adams, 864 S.W.2d 31, 34-35 (Tenn. 1993). A victim is said to be "particularly vulnerable" when the victim is "incapable of resisting, summoning help, or testifying against the perpetrator." Id. at 35. The State of Tennessee has the burden of proving the victim's physical or mental limitations rendered him or her particularly vulnerable. Id.; see State v. Poole, 945 S.W.2d 93, 98 (Tenn. 1997); State v. Kissinger, 922 S.W.2d 482, 487 (Tenn. 1996). The question of whether a victim is particularly vulnerable entails a factual issue which the trial court must decide on a case-by-case basis. Poole, 945 S.W.2d at 97; State v. Boggs, 932 S.W.2d 467, 475 (Tenn. Crim. App.), per. app. denied (Tenn. 1996).

This court is of the opinion the trial court properly used this enhancement factor to increase the defendant's sentence within the appropriate range. See State v. Clabo, 905 S.W.2d 197, 206 (Tenn. Crim. App.), per. app. denied, (Tenn. 1995); State v. Robert Beachboard, Sevier County No. 03-C-01-9302-CR-00041, 1993 WL 350169 (Tenn. Crim. App., Knoxville, September 15, 1993). While the victim attempted to resist, she was neither mentally or physically capable of resisting the defendant. She referred to the defendant's strong hands. Although there were several people in another room, she did not summon assistance. On one occasion, it was the victim's young brother who

7

summoned assistance. The defendant, apparently knowing the brother would seek assistance, ceased molesting the victim.

This issue is without merit.

**(2)**

The defendant challenges the use of enhancement factor (7), the commission of a crime for the gratification, pleasure or excitement of the defendant. Tenn. Code Ann. § 40-35-114(7). He argues the record does not support this factor; and the trial court did not make an adequate finding of fact to support the use of this factor. This court is of the opinion the record supports this factor, and, thus, the trial court properly used this factor to enhance the defendant's sentence within the appropriate range.

The victim testified the defendant asked her "[t]ell me how you feel, woman" and do you "[f]eel like a woman" while he was in the act of sexually abusing the victim. The defendant called the victim's vaginal area her "Tootsie" and told her to show him her "Tootsie." He admitted kissing the victim's breasts on two occasions and kissing her on the lips several times. On one occasion the defendant unzipped his pants and placed the victim's hand on his reproductive organ. The defendant further admitted he digitally penetrated the victim.

This issue is without merit.

**(3)**

Finally, the defendant challenges the use of enhancement factor (15), he violated a private trust. Tenn. Code Ann. § 40-35-114(15). The defendant argues the trial court did not make specific findings of fact to justify the use of this enhancement factor. This court is of the opinion the record supports the use of this factor. Thus, the trial court properly used this factor to enhance the defendant's sentence.

The defendant was married to the victim's great-aunt. The defendant and the great-aunt visited the victim's grandparents, the Gentrys, who lived next door to the victim

8

and her family. When the Jacksons visited Tennessee, they stayed with the Gentrys. The victim visited her grandparents almost daily.

The sexual abuse occurred in the living room of the Gentrys' home, a place which was a safe haven for the victim. The defendant knew the victim was suffering from Down's Syndrome. He saw her frequently. The victim's family and the Gentrys trusted the defendant while he was in the presence of the victim. The defendant violated this private trust.

## C.

The defendant contends the trial court should have applied two mitigating factors when determining the length of his sentences. He argues the trial court should have applied mitigating factor (3), there were substantial grounds which tended to either excuse or justify his conduct even though these grounds failed to establish a defense. Tenn. Code Ann. § 40-35-113(3), and factor (8), he suffered from a mental condition which significantly reduced his culpability, Tenn. Code Ann. § 40-35-113(8), when determining the length of his sentences.

The defendant states in his brief the same facts support the use of both factors. The facts submitted by the defendant are contained in a single sentence: "Clearly all the medical evidence from Drs. Knoll and Kumar was that the defendant suffered from [a] bipolar disorder and paranoid personality traits." He argues the trial court "made no findings regarding defendant's medical condition as it relates to mitigation."

Dr. Herman C. Knoll, an internal medicine practitioner, had known and treated the defendant for twenty years. He also treated Mrs. Jackson. In December of 1991, Dr. Knoll saw the defendant at the request of Mrs. Jackson. Although Dr. Knoll was not trained or educated in the field of psychiatry, he opined the defendant had a bipolar disorder or manic depression. He further opined the defendant was criminally insane in December of 1991.

Dr. Arvind Kumar, a psychiatrist certified by the State of Tennessee in the field of forensic psychiatry, examined the defendant on July 19, 1993 pursuant to an order of the trial court. Dr. Kumar found the defendant was fit to stand trial; he was not suffering from a mental disease; and he knew right from wrong at the time he committed the offenses.

9

He based his opinion upon his examination of the defendant and a review of the defendant's medical records from his December, 1991 hospitalization.

Dr. Kumar's examination revealed the existence of a bipolar disorder which was in remission, paranoid personality traits, and a multitude of physical problems. He stated some people with a bipolar disorder are very successful in life. He was of the opinion the defendant was not paranoid and had had no breaks with reality. Nor was the defendant suffering from a psychosis. The defendant was taking 300 milligrams of Lithium Carbonate three times a day for his depression.

The victim's mother testified at the sentencing hearing. She related her observations concerning the defendant's mental condition. She stated:

> He [the defendant] was always smart enough to do what he done with us in the house or on the porch or right under our noses. I don't think his mental ability should have any reflection on this. He's always been fine to us. We knew he was manic depressive, but I don't see how that has anything to do with what he's done to [my daughter].

The victim's stepfather testified during the sentencing hearing regarding the defendant's mental condition. He stated:

> Well, we'd [the witness and the defendant] sit and talk. He'd talk about things he'd done in the past. Just, you know, like you would go visit your father or someone like that. I enjoyed talking to him. He was just, you know, he'd cut up with you, cut up with the kids.
>
> * * * *
>
> I see nothing wrong with him mentally. I mean his memory was better than mine.
>
> * * * *
>
> And he could recollect these things and tell me. He [knew] names of people. Why, I couldn't even remember them like he could. So, mentally, he was as sound as he could be.

There was evidence establishing the defendant did most of the driving locally, on trips to Tennessee, and on vacation. His wife rarely drove a motor vehicle.

Contrary to the defendant's contention, the trial court made findings regarding the mental condition of the defendant. The court said:

10

I find it hard to understand and inconceivable why a great-uncle of a child who has Down's syndrome would under any state, mental condition that he might have been in short of insanity take advantage of the child in the manner in which he did.

I guess . . . I've sort of indicated, I don't see much justification for any of Mr. Jackson's conduct. I don't think there's any justification based upon the doctors' testimony. The doctor testified at trial. I heard that testimony. He did testify as to problems and mood swings, but the conduct testified to by the victim as to the incidences that happened certainly do not indicate any lack of understanding or an inability to understand what he was doing or form the requisite mental state . . . .

* * * *

I don't think that there are any significant mitigating factors. His health condition and mental condition I suppose are in the record, part of the record, but I don't believe that it in any way significantly reduced his culpability of the offense. I think he knew what he was doing and took pleasure in what he was doing. And I don't think the proof that was presented would justify any lessening of the culpability because of his mental condition.

The trial court predicated its ruling upon the testimony of Dr. Knoll, Dr. Kumar, and the victim's parents.

The evidence concerning the defendant's mental capacity conflicts. The trial court, as the trier of fact, saw the witnesses and observed their demeanor. The court opted to accredit the testimony of Dr. Kumar and the victim's parents. In summary, the defendant has failed to overcome the presumption of correctness afforded the trial court's factual findings. Tenn. Code Ann. § 40-35-401(d).

This issue is without merit.

## D.

The trial court ordered the defendant to serve the two sentences consecutively. This ruling of the court was based upon the provisions contained in Tenn. Code Ann. § 40-35-115(b)(5). This statute provides that consecutive sentencing may be required if:

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship

11

> between the defendant and the victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims.

The defendant contends the trial court erred in ordering consecutive sentencing pursuant to this code section. He argues the victim was not a minor. It is his theory the term "minor" relates to the actual age of the victim -- under the age of eighteen years. The state contends the statute applies in this case. The state argues the term "minor" includes an adult who is mentally equivalent to a person under the age of eighteen years. Thus, this court must determine whether the word "minor" as used in Tenn. Code Ann. § 40-35-115(b)(5) refers to the chronological age and/or the mental age of the victim.

In 1989 the Tennessee General Assembly revised the penal code. The revision included a section which contains the definitions of terms used in the penal code. Tenn. Code Ann. § 39-11-106. This code section defines "minor" as "any person under eighteen (18) years of age." Tenn. Code Ann. § 39-11-106(a)(23)(emphasis added). In other words, this definition encompasses the chronological age of a person. It does not encompass an adult who has the mental capacity of a child under eighteen years of age.

Dictionaries define the word "minor" in terms of chronological age. Webster's Ninth Collegiate Dictionary defines the term "minor" as "[a] person who has not attained majority." Webster's Ninth New Collegiate Dictionary 757 (1984). Black's Law Dictionary defines the term "minor" as "[a]n infant or person who is under the age of legal competence . . . . A term derived from the civil law, which described a person under a certain age as less than so many years." Black's Law Dictionary 689 (6th ed.)(emphasis added).

This court is of the opinion the term "minor," as used in Tenn. Code Ann. § 40-35-115(b)(5), means a person under the chronological age of eighteen years of age as defined by the statute. The statute does not apply when the victim is over the age of eighteen years even though the victim's mental capacity is impaired and the victim has the mental capacity equivalent to a small child.

The sentences in this case must be modified to show the sentences are to be served concurrently rather than consecutively as the trial court ordered.

**E.**

The defendant vigorously argues the trial court abused its discretion by failing to impose some form of alternative sentencing. He argues the trial court did not consider probation or any other form of alternative sentencing notwithstanding the fact he was presumed to be a favorable candidate for such a sentence.

The statute addressing the purposes of sentencing encompasses a provision regarding alternative sentencing. Tenn. Code Ann. § 40-35-102(6). Subsection (6) states:

> A defendant who does not fall within the parameters of subdivision (5) and is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary.

Thus, the trial court's determination of the sentence to be imposed must necessarily commence with the defendant's entitlement to the presumption. As the Supreme Court said: "If [the] determination is favorable to the defendant, the trial court must presume that he is subject to alternative sentencing. If the court is presented with evidence sufficient to overcome the presumption, then it may sentence the defendant to confinement according to the statutory provision[s]." Ashby, 823 S.W.2d at 169 (emphasis added).

The presumption may be rebutted by the state. As this court said in Jernigan:

> The presumption can be successfully rebutted by facts contained in the presentence report, evidence presented by the state, the testimony of the accused or a defense witness, or any other source provided it is admissible evidence and made a part of the record.

929 S.W.2d at 395-96.

In this case, the defendant was entitled to the presumption that he was a favorable candidate for alternative sentencing. He was convicted of a Class E felony and was sentenced as a standard offender. The length of the sentence was two years. Therefore, the question presented is whether the state successfully rebutted the presumption.

The defendant has a history of prior convictions and criminal behavior. He has been convicted of a weapons offense, assault, endangerment, committing criminal damage and

13

menacing.  While the impact statement submitted by the victim's mother contains hearsay, she relates that the defendant had sexually abused an adopted daughter, an 86-year-old relative, and others from his neighborhood.

The criminal conduct of the defendant has had a devastating effect upon the victim and her family.  The victim's parents testified at the sentencing hearing.  They detailed how the family members had been affected, especially the victim.  Besides the defendant's prior criminal convictions and behavior, there were three additional enhancement factors supported by the record.  The record does not support any mitigating circumstances.

This court finds the state successfully rebutted the presumption in favor of alternative sentencing.  Therefore, the trial court properly required the defendant to serve the two sentences in confinement.

In this case, confinement is necessary to avoid depreciating the seriousness of these offenses as well as to deter others from committing the same or similar offenses.  Tenn. Code Ann. § 40-35-103(1)(B).  Sexual offenses are serious when, as here, the defendant takes advantage of a victim who is mentally retarded due to Down's Syndrome.  Furthermore, the dockets of this court and the decisions of the appellate courts are replete with sex-related offenses, particularly sexual battery.  In addition, measures less restrictive than confinement have been applied to the defendant unsuccessfully in the past.  Tenn. Code Ann. § 40-35-103(1)(C).

This issue is without merit.


_____
JOE B. JONES, PRESIDING JUDGE

CONCUR:


_____
PAUL G. SUMMERS, JUDGE


_____
WILLIAM M. BARKER, JUDGE

14