STATE of Tennessee, Appellee,

v.

Stan JERNIGAN, Appellant.

Court of Criminal Appeals of Tennessee, at Nashville.

Feb. 23, 1996.

Permission to Appeal Denied by Supreme Court Sept. 9, 1996.

Lionel R. Barrett, Jr., Nashville, for appellant.

Charles W. Burson, Attorney General & Reporter, Nashville, Mary M. Bers, Assistant Attorney General, Nashville, Victor S. Johnson, III, District Attorney General, Nashville, William R. Reed, Assistant District Attorney General, Nashville, for appellee.

## OPINION

JONES, Judge.

The Davidson County Grand Jury returned a fourteen count indictment against the appellant, Stan Jernigan.[1] The indictment charged the appellant with two (2) counts of aggravated rape, a Class A felony, eleven (11) counts of aggravated sexual battery, a Class B felony, and (1) count of sexual battery, a Class E felony. The appellant entered pleas of guilty to five (5) counts of attempt to commit aggravated sexual battery, a Class C felony, pursuant to a plea bargain agreement. Since the parties could not reach an agreement on the appropriate punishment, a sentencing hearing was conducted by the trial court. The trial court found that the appellant was a standard offender and sentenced the appellant to a Range I sentence of confinement for five (5) years in the Department of Correction in each count. The trial court ordered that the sentences imposed in Counts 1, 2, 10, and 11 are to be served concurrently to each other, but the sentences are to be served consecutively to Count 13. Therefore, the effective sentence imposed is confinement for ten (10) years in the Department of Correction.

Four issues are presented for review. However, these issues may be consolidated into three issues, namely: (a) the sentences imposed were excessive, (b) the trial court abused its discretion in ordering consecutive sentencing, and (c) the trial court abused its discretion in refusing to grant some form of alternative sentencing.

The judgment of the trial court is affirmed.

The appellant was fifty-four years of age when he was sentenced. His marriage ended in divorce in 1976. The only child born to this union is twenty-five (25) years of age. The appellant has a bachelor of science degree in psychology and sociology. He has a masters degree in social work with a speciality in child welfare. Thereafter, he spent most of his life counselling others. He assisted in the development of a drug and alcohol abuse center and served as its director.

When sentenced, the appellant's primary concern was his comatose father, who was ninety-two years of age. His father was maintained in a nursing home until the family funds were depleted. Thereafter, the appellant took care of his father at home. He did some consultation, worked with his son on a contract for billing at a local university, and helped manage rental property.

1. The appellant was indicted as "Stan Jernigan." He testified that his full name is "Stanley R. Jernigan." The two names refer to the same person, the appellant in this cause.

The appellant was also active in his church over a period of years. He taught church school at all levels, was active on several church committees, served as youth director for almost four years, and had spoken to the congregation during services on several occasions.

The appellant became acquainted with the victims and their two older brothers when they lived across the street from him. They visited his residence. He recognized that the children were neglected and abused. It seems that their mother and father had become addicted to drugs and alcohol. Their mother was convicted and sent to jail. The father placed the children in a home.

On weekends the appellant went to visit the children. He took their father with him when their father could go. The appellant cared for the children in his home on alternate weekends. The children were separated at one point. Eventually, all the children became unhappy residing in the home. Shortly before the children's mother was to be released from jail, their father took them from the home and allowed them to live in the appellant's home. This arrangement was to last during the summer. The children's mother and father were going to unite, obtain a place to live, and the children would live with their parents. However, it may be gleaned from the record that their mother and father continued to have problems related to alcohol and drug addiction. What was to last a summer ended in the children living with the appellant for several years. The mother eventually obtained the two youngest children, the victims in this case, and the two older boys continued to live with the appellant. Although adults and working, the boys, now young men, continued to live with the appellant. Although adults and working, the boys, now young men, continued to live with the appellant. The victims would occasionally visit the appellant until it was discovered that he had sexually abused them.

The appellant readily acknowledged his guilt. He stated that he has had an attraction to young boys between the ages of ten and fourteen. This problem had existed for approximately forty years of his life. He received treatment for this condition in the 1970s, but professionals in the fields of psychology and psychiatry did not know how to treat such conditions. The appellant consulted a clinical psychologist who has had a wealth of experience in treating sex offenders as well as victims of sexual abuse. He was being treated by this person until the time of the sentencing hearing.

No one has been able to determine why the appellant has an attraction to boys. The psychologist testified that the appellant had a normal childhood except for having polio. As a result, he could not play sports or engage in many other activities. She opined that this may have been the cause for his desire.

The appellant testified that he has his pedophilia condition under control. He had prepared what is called a Relapse Prevention Plan. This plan explained how the appellant would guard against a relapse. He intended to stay away from children unless there were adults present. He planned to stay away from some public facilities so that he would not see the children, and, therefore, would not be able to engage in fantasies at a later time. It was an extremely elaborate plan. It had been refined and approved by the psychologist.

It was the opinion of the psychologist that the appellant was not a "predator," who drives around the city looking for young boys, goes to playgrounds seeking them, or tries to cultivate friendships with such children. In this case, the victims were living in the same house with the appellant.

The psychologist testified that the appellant's prognosis was good but guarded. She stated that the appellant "would have to continue in therapy, long-term intensive therapy." She also recommended that if he remained in society, the appellant should be placed under house arrest or subjected to electronic monitoring. This would alert the responsible authorities and professionals if there were any "red flags" indicating a need for correction.

The appellant was described by his friends, family members, and co-employees at the drug and alcohol abuse center as being an excellent person, a good friend, interested in other people, and always willing to help oth-

ers. These individuals expressed the view that while the appellant had committed egregious crimes, he would not engage in this same conduct if left in society. The appellant expressed great remorse for his transgressions. He subsequently suffered from depression, suffered great pain from his condition and from what he had done to these children, and there was concern that he had expressed suicidal tendencies.

## I.

■■■ When an accused challenges the length and manner of service of a sentence, it is the duty of this Court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn.Code Ann. § 40–35–401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn.1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or the determinations made by the trial court which are predicated upon uncontroverted facts. *State v. Butler,* 900 S.W.2d 305, 311 (Tenn.Crim.App.1994); *State v. Smith,* 891 S.W.2d 922, 929 (Tenn. Crim.App.), *per. app. denied* (Tenn.1994); *State v. Bonestel,* 871 S.W.2d 163, 166 (Tenn. Crim.App.1993). However, this Court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination is based upon the witnesses' demeanor, appearance, and inflection in their voices.

In conducting a *de novo* review of a sentence, this Court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. *See* Tenn.Code Ann. §§ 40–35–103 and –210. *State v. Scott,* 735 S.W.2d 825,

829 (Tenn.Crim.App.), *per. app. denied* (Tenn.1987).

When the accused is the appellant, the accused has the burden of establishing that the sentences imposed by the trial court were erroneous. Sentencing Commission Comments to Tenn.Code Ann. § 40–35–401(d); *Ashby,* 823 S.W.2d at 169; *Butler,* 900 S.W.2d at 311.

## II.

If an accused has been convicted of a Class C, D, or E felony and sentenced as either an especially mitigated offender or standard offender, there is a presumption, rebuttable in nature, that the accused is a favorable candidate for alternative sentencing unless disqualified by some other provision of the Tennessee Criminal Sentencing Reform Act of 1989. Tenn.Code Ann. § 40–35–102 provides in part:

(5) In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration; and

(6) A defendant who does not fall within the parameters of subdivision (5) and is an especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary.

■■■ The sentencing process must necessarily commence with a determination of whether the accused is entitled to the presumption. *State v. Ashby,* 823 S.W.2d at 169. As the Supreme Court said in *Ashby:* "If [the] determination is favorable to the defendant, the trial court *must* presume that he is subject to alternative sentencing. If the court is presented with evidence sufficient to overcome the presumption, then it may sentence the defendant to confinement according to the statutory provision[s]." 823 S.W.2d at 169 (emphasis added). The presumption can be successfully rebutted by facts contained in

the presentence report, evidence presented by the state, the testimony of the accused or a defense witness, or any other source provided it is admissible as evidence and made a part of the record.

In this case, the appellant was entitled to the presumption that he was a favorable candidate for alternative sentencing. He was sentenced as a standard offender and convicted of a Class C felony. Therefore, the question presented to this Court is whether the state was able to overcome this presumption.

The trial court denied the appellant's request for an alternative sentence to avoid depreciating the seriousness of the offenses committed by the appellant as well as to deter the appellant and others from committing sexual offenses against children. Tenn. Code Ann. § 40–35–103(1)(B). The question of whether the appellant can actually be rehabilitated is a question open to debate. He has been a pedophile for forty years by his own admission. The record reveals the seriousness and extent of his "sexual appetite," a phrase used by the appellant. This is evidenced by the appellant's testimony and the document designated as a "Relapse Prevention Plan."

The ruling of the trial court showed concern that if the appellant was released into society, he may have a relapse. This would subject other young children to the appellant's deviant disposition. Moreover, the appellant's own psychologist gave a guarded prognosis. She recommended extensive, prolonged therapy, and house arrest or electronic surveillance. According to the psychologist, this format would detect the existence of any "red flags."

This Court concludes that the trial court did not abuse its discretion in refusing to grant the appellant's request for alternative sentencing.

### III.

The trial court found two mitigating factors pursuant to Tenn.Code Ann. § 40–35–113(13). The trial court found that the appellant was extremely remorseful for his transgressions. He also found that the ap-

pellant spared the victims and their family from a lengthy trial by pleading guilty to the offenses in question. The trial court found three enhancement factors: (a) the victims were particularly vulnerable due to age, Tenn.Code Ann. § 40–35–114(4); (b) the appellant committed these offenses to gratify his desire for pleasure or excitement, Tenn. Code Ann. § 40–35–114(7); and (c) the appellant abused a position of private trust. Tenn. Code Ann. § 40–35–114(15). Based upon the evidence presented at the sentencing hearing, the trial court should have found that the personal injuries inflicted upon the victims were particularly great. Tenn.Code Ann. § 40–35–114(6).

The appellant challenges two of the enhancement factors applied by the trial court and contends there are additional mitigating circumstances that were not considered by the trial court. First, the appellant contends that the trial court failed to prove that the victims were particularly vulnerable and the offenses were committed to gratify his desire for pleasure and excitement.

### A.

### (1)

The appellant argues that the state failed to establish the victims were "particularly" vulnerable within the meaning of Tenn. Code Ann. § 40–35–114(4). He also contends that this factor is "closely tied to the private position of trust abuse enhancement factor."

The appellant testified that the victims, who were quite young when the sexual abuse occurred, had been "abused, neglected emotionally, physically," and he "knew that they were needy and vulnerable." The psychologist who was treating the appellant testified that the children's past was "chaotic." Also, their love and respect for the appellant as well as their desire to live away from the children's home caused victim S.S. to please the appellant so that she could remain in his home. *See State v. Henry Smith*, 910 S.W.2d 457 (Tenn.Crim.App.1995), *per. app. denied* (Tenn.1995). The abuse of victim R.S. occurred during a visit. However, there is evidence that he too loved the appellant for

the same reason. The state established this factor through the appellant's own testimony.

■ Contrary to the appellant's unique argument, this enhancement factor is completely separate from factor (15). It takes separate facts to establish each factor. Furthermore, the evidence may support either factor independent of the other. The evidence, as in this case, may support both factors.

The trial court properly applied this factor to enhance the sentences within the appropriate range.

### (2)

■ The evidence presented at the sentencing hearing established that the sexual abuse of the two victims was motivated by the appellant's desire for sexual pleasure. Tenn.Code Ann. § 40–35–114(7). The record is replete with testimony concerning the appellant seeing young boys in public and indulging in fantasies that involved the appellant and the young boys. In this case, he testified that he was too weak to resist the temptation of the female victim, S.S., while she resided in the residence with him.

The appellant prepared what is referred to as a Relapse Prevention Plan. In essence, this plan sets forth what the appellant planned to do if he was left in society to avoid contact with children. He described the "beast within me" as his "sexual appetite." While the appellant described the plan as "overkill," it illustrated the appellant's exceptionally strong sexual appetite. One of the measures the appellant would take is to avoid public restrooms. He was afraid that if he saw young boys in a semi-nude state, he would begin to fantasize about the young boys. He was concerned that such circumstances would result in his losing control of his sexual drive again. The trial court expressed serious concern about the extent of the appellant's condition when viewing the Relapse Prevention Plan.

The trial court properly applied this factor to enhance the sentences within the appropriate range.

### (3)

■ The evidence adduced at the sentencing hearing revealed that the victims had visited in the home of the appellant frequently. When the victims' family structure collapsed following their parents' bouts with alcohol and drug abuse, and the children were placed in the home for children, the appellant visited the children on alternate weekends. On the other weekends the appellant brought the victims and their two older brothers to his home. Furthermore, it was the appellant who sought and was given permission to remove the children from the home so that all four children could live with him.

The appellant was described as a "father figure" to the children and as the "caretaker" of the children. When he sexually abused the two victims, the appellant violated a private trust. Tenn.Code Ann. § 40–35–114(15); *see State v. McKnight*, 900 S.W.2d 36, 55 (Tenn.Crim.App.1994), *per. app. denied* (Tenn.1995); *State v. Thomas Leon Smith*, Davidson County No. 01–C–01–9310–CR–00374, 1994 WL 504392 (Tenn.Crim. App., Nashville, September 15, 1994); *State v. Paul Benson*, Hawkins County No. 03–C–01–9307–CR–00241, 1994 WL 666892 (Tenn. Crim.App., Knoxville, November 30, 1994); *State v. Roy David McCarter*, Blount County No. 03–C–01–9402–CR–00050, 1994 WL 377234 (Tenn.Crim.App., Knoxville, July 14, 1994), *per. app. denied* (Tenn.1994).

The trial court properly applied this factor to enhance the sentences within the appropriate range.

### (4)

■ The trial court should also have used enhancement factor (6) since there was ample evidence that the personal injuries sustained by the two victims were particularly great. Tenn.Code Ann. § 40–35–114(6). This Court has the authority to find and apply enhancement factors that are supported by the evidence although not applied by the trial court. *State v. Adams*, 864 S.W.2d 31, 34 (Tenn.1993); *State v. Pearson*, 858 S.W.2d 879, 884–85 (Tenn.1993).

■ The victims suffered severe psychological injuries and scarring. This Court has previously held that the phrase "personal injury," as used in enhancement factor (6) is broad enough to embrace this type of "injury." *McKnight,* 900 S.W.2d at 54; *State v. Smith,* 891 S.W.2d 922, 929–30 (Tenn.Crim. App.), *per. app. denied* (Tenn.1994).

The clinical social workers who treated the victims testified at the sentencing hearing. These witnesses outlined the severe psychological scarring that was caused by the appellant's actions in abusing the victims. Both witnesses opined that the psychological damage suffered by each witness will result in extensive, long-range counselling; and both victims will suffer in one form or another for the balance of their respective lives.

### B.

■ The appellant contends that the trial court should have found that he "was suffering from a mental or physical condition that significantly reduced his culpability for the offense." Tenn.Code Ann. § 40–35–113(8). He also contends that he committed the crimes in question under circumstances which made it unlikely he had a sustained intent to violate the law. Tenn.Code Ann. § 40–35–113(11). The trial court rejected these mitigating factors.

This Court has reviewed the record at great length. Since the findings of fact made by the trial court are afforded a presumption of correctness, this Court finds that the appellant has failed to overcome this presumption. In reaching its findings of fact, the trial court saw the appellant, watched his demeanor, and heard the inflections in his voice. In other words, the findings of the trial court in this regard are certainly based upon the trial court's assessment of the appellant's credibility as a witness and the credibility of other defense witnesses.

This issue is without merit.

### IV.

■ The trial court ordered that the sentences for the offenses committed against S.S. are to be served consecutively with the sentence for the offense committed against R.S. The effective sentence imposed was ten (10) years. The court predicated the consecutive sentencing upon Tenn.Code Ann. § 40–35–115(b)(5). This statute provides that when an accused "is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims," the court may within the exercise of its discretion order the sentences to be served consecutively.

In this case, the trial court did not abuse its discretion in ordering consecutive sentencing. The appellant was defined as a "father figure" or "caretaker" of the victims. The sexual abuse of S.S. took place over an extended period of time while the sexual abuse of R.S. occurred after S.S. and R.S. had reunited with their mother. The victims would return to visit the appellant and their two brothers. Both victims suffered tremendous psychological scarring as a result of the sexual abuse. S.S. was hospitalized twice as a result of her condition. The clinical social workers treating the victims opined that the psychological scarring will remain with the victims the balance of their lives.

While the appellant is not considered a "predator," of young boys, the psychologist treating the appellant could not guarantee that he was cured or would not engage in like or similar conduct in the future. The psychologist testified that his prognosis was "guarded." She stated that if the appellant was permitted to remain in society, he would have to have prolonged, intensive treatment, and she recommended that the appellant be placed under house arrest or electronic surveillance. This is the only way she stated it could be determined if any "red flags" were surfacing. The appellant stated "children are toxic to me" and testified that he has had this predisposition for young boys for forty years. Based upon the Relapse Protection Plan and the psychologists prognosis, the trial court was of the opinion that the appel-

lant would be a risk due to his exceptionally strong "sexual appetite."

The trial court did not abuse its discretion in ordering consecutive sentencing. The facts in this case meet the criteria of the statute. In addition, an extended period of time is essential to protect other children from the appellant's sexual appetite. The length of the sentence "reasonably relate[s] to the severity of the offenses committed." *State v. Wilkerson,* 905 S.W.2d 933, 939 (Tenn.1995); *see State v. Taylor,* 739 S.W.2d 227, 230 (Tenn.1987).

This issue is without merit.

AFFIRMED.

WELLES and BARKER, JJ., concur.