IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

MARCH 1999 SESSION

FILED

July 19, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | * | C.C.A. # 01C01-9804-CR-00183 |
| Appellee, | * | DAVIDSON COUNTY |
| VS. | * | Honorable Seth Norman, Judge |
| **TOMMY EDWARD SMITH,** | * | (Delivery of Controlled Substance) |
| Appellant. | * | |

FOR THE APPELLANT:

SAM WALLACE, SR.
227 Second Avenue N.
Nashville, TN 37201

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

GEORGIA BLYTHE FELNER
Counsel for the State
425 Fifth Avenue North
Nashville, TN  37243-0493

VICTOR S. (TORRY) JOHNSON III
District Attorney General

JOHN C. ZIMMERMAN
Assistant District Attorney General
Washington Square, Suite 500
222 Second Avenue N.
Nashville, TN 37201-1649

OPINION FILED: _____

**AFFIRMED**

**JOHN EVERETT WILLIAMS,**
Judge

# OPINION

The defendant, Tommy Edward Smith, pleaded guilty to three deliveries of cocaine, a Schedule II substance. He twice delivered .5 or more grams of cocaine, and the remaining delivery involved twenty-six or more grams of cocaine. Each violation constituted a separate Class B felony. The Davidson County Criminal Court sentenced the defendant as a Range I offender to three concurrent eight-year sentences in the Tennessee Department of Correction (TDOC). The defendant appeals, asserting that the trial court erroneously denied him Community Corrections. We AFFIRM the trial court's judgment.

## BACKGROUND

The submitted record includes a transcript, which comprises testimony of the defendant and two witnesses, testimony of a codefendant sentenced at the same hearing, and the trial court's findings.

The first witness, Latonya Flenoy, testified that she was the defendant's girlfriend. According to Flenoy, the defendant had no regular employer. However, various persons would call him for "handyman" jobs, and she claimed that he worked approximately thirty hours per week on these jobs.

The defendant's mother, Christine Denise Williams, essentially testified that she would help her son succeed in Community Corrections. Williams is a Director of Operations with Shoney's Inc. and promised to help her son obtain a job. She candidly stated that she would not support him if he continued pursuing criminal activities. She would, however, devote herself to helping the defendant with the consequences of his current convictions.

The defendant guaranteed his compliance with any restrictions imposed under a Community Corrections sentence. On cross-examination, when asked

the name of his cocaine source, the defendant replied, "Well, see, I didn't know his name." His counsel obtained a brief recess, conferred with his defendant, and cross-examination resumed.

The state pursued the source's identity, and the defendant asserted that his source, Gary Douglas, had died. The defendant's further testimony on this point was not enlightening. The defendant had only known Douglas "a couple of months," yet Douglas would advance him at least one and one-half ounces of cocaine. The defendant first testified that he did not know Douglas's accomplices and never saw him with other people. However, the defendant subsequently described a busy nightclub scene where he apparently met and assumedly cultivated some relationship with Douglas. The defendant vaguely described the mechanics of the interaction: They were "all in the club . . . mingling and talking."

In short, the defendant claimed a paucity of knowledge regarding Douglas's business, stating that he "didn't know much about it" and "didn't know much about [Douglas]." Ignorant as to Douglas's residence, the defendant had contacted him through a pager number.

Regarding the defendant's relationship with codefendant Beverly D. Ray, the defendant testified that he provided drugs "[m]aybe two - maybe two or three times" to Ray before the three transactions leading to his convictions.

During the final and largest transaction, two male subjects in a vehicle followed the defendant from one location to another, apparently conducting countersurveillance. The defendant noticed the subjects "riding around in the area" but denied any further knowledge of them.

After the defendant testified, the trial court commented that the defendant was covering for accomplices and protecting involved parties, including the apparent countersurveillance. The trial court could not anticipate a "straight answer" from the defendant.

The record comprises codefendant Beverly D. Ray's sentencing hearing testimony. She testified that she not only obtained the drugs for the three sales from the defendant but also had obtained drugs for her personal use prior to the transactions. Before these transactions, she had seen the defendant with drugs and knew he was a dealer. According to Ray, the defendant could have provided the two ounces of cocaine she originally anticipated delivering in the third transaction.

At the conclusion of the hearings, the trial court assessed the defendant as a Range I offender and found neither enhancing nor mitigating factors. At a subsequent proceeding, the trial court denied Community Corrections.

**ANALYSIS**

The defendant asserts only that the trial court abused its discretion by denying Community Corrections. When an accused challenges the length or manner of service of a sentence, this Court reviews the record de novo "with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). The presumption of correctness is contingent on the record indicating both the lower court's reasons for arriving at a sentencing decision and compliance with the statutory sentencing guidelines and principles. See State v. Wilkerson, 905 S.W.2d 933, 934 (Tenn. 1995). The appellant bears the burden of showing that the sentencing was improper. See Tenn. Code Ann. § 40-35-401(d) sentencing comm'n cmts; State v. Jernigan, 929 S.W.2d 391, 395 (Tenn. Crim. App. 1996).

The following considerations apply: (1) the evidence received at trial and at the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) any statutory mitigating or enhancement factors; (6) any statement made by the accused on his own behalf; and (7) the potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

The established criteria for sentencing to Community Corrections are as follows:

(1) Persons who, without this option, would be incarcerated in a correctional institution;
(2) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
(3) Persons who are convicted of nonviolent felony offenses;
(4) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
(5) Persons who do not demonstrate a present or past pattern of behavior indicating violence;
(6) Persons who do not demonstrate a pattern of committing violent offenses

Tenn. Code Ann. § 40-36-106(a).

Even if the defendant met these criteria, eligibility for Community Corrections does not mandate that alternative sentencing. Community Corrections is a "community based alternative[ ] to incarceration." Tenn. Code Ann. § 40-36-103(1) (emphasis provided). Relevant provisions of the Criminal Sentencing Reform Act govern application of alternative sentencing, including Community Corrections. See State v. Ashby, 823 S.W.2d 166 (Tenn. 1991) (On reviewing an appeal from denied Community Corrections, the Tennessee Supreme Court applied the statute for that time period regarding probation.).

Therefore, "[i]n reviewing a trial court's denial of an alternative sentence, we must first determine whether the appellant is entitled to the statutory presumption that he is a favorable candidate for alternative sentencing." State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). The defendant, convicted of three Class B felonies, is not "presumed to be a favorable candidate for alternative sentencing options." Tenn. Code Ann. § 40-35-102(b).

Further, the trial court found that the defendant's testimony lacked candor and truthfulness. "Generally, this [C]ourt will not set aside findings of fact made by the trial court after an evidentiary hearing unless the evidence contained in the record preponderates against the trial court's findings." Zeolia, 928 S.W.2d at 462. We conclude that the evidence does not preponderate against the trial court's findings.

Untruthful testimony reflects adversely on a defendant's rehabilitative potential and is thus relevant in determining appropriate sentence alternatives. See Tenn. Code Ann. § 40-35-103(5). Such testimony may constitute the sole bar to alternative sentencing. See State v. Dowdy, 894 S.W.2d 301 (Tenn. Crim. App. 1994).

By statute, the trial court could not presume that the defendant merited alternative sentencing. The defendant's own testimony dissuaded the trial court from otherwise considering Community Corrections. The trial court committed no error by denying Community Corrections.

-6-

**CONCLUSION**

The judgment of the trial court is AFFIRMED.

-7-

_____
JOHN EVERETT WILLIAMS, Judge

CONCUR:

_____
DAVID H. WELLES, Judge

_____
JOE G. RILEY, Judge