# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### MARCH 1999 SESSION

FILED

September 24, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **WILLIE WITHERSPOON,** | * | C.C.A. # 01C01-9809-CC-00363 |
| Appellant, | * | ROBERTSON COUNTY |
| VS. | * | Honorable Robert W. Wedemeyer, Judge |
| **STATE OF TENNESSEE,** | * | (Sale of Schedule II Controlled Substance - 2 counts) |
| Appellee. | * | |

FOR THE APPELLANT:

MICHAEL R. JONES  (On Appeal)
District Public Defender
110 Public Square
Springfield, TN 37172

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

KIM R. HELPER
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

JOHN WESLEY CARNEY, JR.
District Attorney General

B. DENT MORRISS
Assistant District Attorney
500 South Main Street
Springfield, TN 37172

OPINION FILED: _____

**AFFIRMED**

**JOHN EVERETT WILLIAMS,**
Judge

# OPINION

The defendant, Willie Witherspoon, files this delayed appeal from a Robertson County jury verdict convicting him of two sales of a Schedule II controlled substance. One sale, a Class B felony, involved 0.5 or more grams of cocaine, and the other sale, a Class C felony, involved less than 0.5 gram of cocaine.

The defendant was sentenced to the Department of Correction for eleven years as a Range I standard offender for the Class B felony and nine years as a Range II multiple offender for the Class C felony. These sentences were consecutive to each other and consecutive to a sentence from a prior conviction. The defendant was found guilty on August 7, 1996 and sentenced on December 6, 1996. On October 16, 1997, the defendant filed a petition for post-conviction relief which alleged that his trial counsel had promised he would pursue a direct appeal of his sentence. Trial counsel filed no appeal. On August 14, 1998, the trial court entered an order granting this delayed appeal from his sentences.

## BACKGROUND

The first witness at trial, Joe Macleod, was a police officer assigned to the 19th Judicial Drug Task Force (DTF). Macleod testified that the DTF had established credibility for the confidential informant participating in the instant case by that informant's previous participation in over 60 other investigations. Macleod supervised both purchases from the defendant, and his testimony described visual surveillance and other specifics of the investigation.

The informant testified that she ordered a gram of cocaine from the defendant. After calling the defendant and placing the order, the informant met the defendant in a parking lot and exchanged money for the cocaine. Several days later, the informant called the defendant and ordered a "sixteenth," or one-

sixteenth of an ounce of cocaine. The defendant again met her at the parking lot and exchanged the cocaine for money. The state presented both videotaped and audiotaped evidence of the transactions to the jury.

At the sentencing hearing, the trial court noted that the defendant had pleaded guilty in December 1994 to a Class B cocaine felony, receiving eight years in Community Corrections as a Range I offender. The trial court also noted the defendant's Class E felony conviction for a Schedule VI violation in 1981.

Officer Lemley of the DTF testified at the sentencing hearing. He testified that the defendant apparently held no regular jobs during Lemley's two-year tenure with the DTF. However, the defendant accumulated substantial assets, including his residence and other realty; a race car; a "dually" pickup truck; a Corvette; and approximately thirty-thousand dollars worth of tools.

The defendant testified at the sentencing hearing and claimed that he left his last employer in 1992 with "numerous [sic] amounts of money that [he] did not have to have." He performed odd jobs and sold drugs to support some of his fourteen children. The defendant testified that he had served approximately eleven months on Community Corrections when he was arrested for the charges in the instant case. His own cocaine problem "played a part" in his selling cocaine.

**ANALYSIS**

*Admission of Evidence*

During the trial, the state's proof comprised:

1. The testimony of Officer Macleod, establishing the DTF's three-year investigation of the defendant;
2. Officer Macleod's testimony regarding procedure for establishing confidential informant reliability;

> 3. That officer's testimony regarding the DTF policy of targeting drug dealers, versus users, and regarding the defendant's assets; and
> 4. Testimony that the defendant was responsible for all crime in Robertson County.[1]

The defendant asserts that admission of this evidence constituted "serious, substantial, egregious and fundamental errors which [sic] strike and destroy the judicial proceedings," and he also asserts that this evidence was totally irrelevant and intended solely to "poison the jury." See Tenn. R. Evid. 401, 402, 403. The defendant did not, however, object to the contested evidence at trial. See Tenn. R. App. P. 36(a) (This Court is not required to provide relief "to a party . . . who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); see also State v. Killibrew, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988) (applied Rule 36(a) when defendant failed to object to the admission of evidence).

This issue is waived. The defendant did not file a motion for new trial within thirty days of the order entering his sentence. See Tenn. R. Crim. P. 33(b); Tenn. R. Crim. P. 45(b); State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997) (The provision for filing a timely motion for new trial is mandatory and may not be extended). "[T]he failure to timely file a motion for a new trial results in the waiver of those issues which may result in the granting of a new trial." State v. Dodson, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989); see also Tenn. R. App. P. 3(e) ("Provided, however, in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence . . . unless the same was specifically stated in a motion for new trial; otherwise such issues will be treated as waived."). Further, the trial court's Order granting a delayed appeal restricts that appeal to the issue of the defendant's sentence and bars any consideration of evidentiary issues.

---

[1] The relevant testimony actually addressed the propensity for violence possessed by some of the defendant's sons.

The defendant asserts, however, that these allegedly erroneous admissions affected his substantial rights and thereby merit our review. See Tenn. R. Crim. P. 52(b) ("An error which [sic] has affected the substantial right of the accused may be noted at any time . . . where necessary to do substantial justice."). A panel of this Court held that such a plain error review must be predicated on an "especially egregious error that strikes at the fairness, integrity or public reputation of judicial proceedings." State v. Adkisson, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994). The defendant has not demonstrated that the contested evidence reaches this standard: This evidence was not so unfairly prejudicial as to "destroy the judicial proceedings."

**SENTENCING**

The defendant also submits two challenges to his sentence. He asserts that the trial court both erroneously enhanced his sentence and erroneously imposed consecutive sentencing. When an accused challenges the length or manner of service of a sentence, this Court reviews the record de novo "with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). The presumption of correctness is contingent on the record indicating both the lower court's reasons for arriving at a sentencing decision and compliance with the statutory sentencing guidelines and principles. See State v. Wilkerson, 905 S.W.2d 933, 934 (Tenn. 1995). The appellant bears the burden of showing that the sentencing was improper. See Tenn. Code Ann. § 40-35-401(d) sentencing comm'n comments; State v. Jernigan, 929 S.W.2d 391, 395 (Tenn. Crim. App. 1996). The following considerations apply: (1) the evidence received at trial and at the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) any statutory mitigating or enhancement factors; (6) any statement made by the accused on his own behalf;

and (7) the potential or lack of potential for rehabilitation or treatment.  See Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

*Enhancement factors*

We find no reversible error in the trial court's application of three enhancement factors to the defendant's sentences: (1) "[P]revious history of criminal conviction or criminal behavior in addition to those necessary to establish the appropriate range"; (2) "a previous history of unwillingness to comply with the conditions of a sentence involving release in the community"; and (3) commission of the offenses while on release status from a prior felony conviction.  See Tenn. Code Ann. § 40-35-114 (1), (8), (13)(e).  The defendant contests the trial court's applying enhancement factor (8), regarding "a previous history of unwillingness to comply with the conditions of a sentence involving release in the community."  Tenn. Code Ann. § 40-35-114(8).  Commission of an offense, and subsequent conviction for that offense, may not constitute a basis for enhancing the sentence for that offense under factor (8).  See State v. Hayes, 899 S.W.2d 175, 186 (Tenn. Crim. App. 1995). Therefore, conviction for the instant two offenses can not support enhancement of their sentences.

However, the defendant testified that he had used drugs in violation of his Community Corrections sentence.  This testimony properly invokes factor (8).  Further, the defendant admitted selling drugs "many times."  These multiple sales, independent from the two transactions in the instant case, demonstrate unwillingness to comply with community release.

The trial court assigned "very slight weight" to two findings: the defendant's testifying candidly and his providing for his family.  See Tenn. Code Ann. § 40-35-113 (13), (7).  We respectfully disagree with the conclusion that

-6-

these factors apply to the defendant's benefit. First, a defendant's testifying under oath should not merit application of the "catch-all" mitigating factor for speaking the truth. See Tenn. Code Ann. § 40-35-113 (13). Further, to invoke factor (7), the statute explicitly requires that a defendant sought necessities for his family when that defendant violated a law. The record does not establish that Corvettes, real estate, and race cars were necessary to support the defendant's family.

*Consecutive sentencing*

A trial court in its discretion may impose consecutive sentencing on multiple convictions under certain circumstances. See Tenn. Code Ann. § 40-35-115. The trial court found, by a required preponderance of the evidence, that the defendant "[was] a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood." Tenn. Code Ann. § 40-35-115(b) (1). Although the record supports this specific finding, the Tennessee Supreme Court has imposed a proportionality requirement for consecutive sentencing:

> [T]he imposition of consecutive sentences on an offender found to be a dangerous offender requires, in addition to the application of the general principles of sentencing, the finding that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences must reasonably relate to the severity of the offenses committed.

State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995). This holding specifically addresses cases involving consecutive sentencing based on a defendant's classification as a dangerous offender. However, authority exists for the proposition that these findings are necessary for consecutive sentencing on other bases. See State v. Desirey, 909 S.W.2d 20, 33 (Tenn. Crim. App. 1995) (required these additional findings for consecutive sentencing based on the trial court finding the defendant a professional criminal). But see State v. Lane, No. 03C01-9607-CC-00259 (Tenn. Crim. App. filed June 18, 1997, at Knoxville)

-7-

(appeal argued before Tennessee Supreme Court, January 1999) ("It is not cogently clear, however, that <u>Wilkerson</u> applies to any case other than one involving the sentencing of a dangerous offender under § 40-35-115(b)(4). The opinion in <u>Wilkerson</u> may be fairly construed to apply only to consecutive sentencing of dangerous offenders.")

Because the trial court did not specifically articulate these findings, our review is de novo regarding the <u>Wilkerson</u> requirements. The record contains sufficient proof for a finding that consecutive sentencing is appropriate. The defendant testified that he had sold cocaine on many occasions and that he was "addicted" to selling cocaine. He continued to deal drugs while on Community Corrections and conceded that he realized that each sale of cocaine "would contribute to someone's habit." We therefore conclude that consecutive sentencing is necessary to protect the public from further criminal conduct by this defendant. We further conclude that consecutive sentencing is reasonably related to the severity of the offenses and is congruent with general principles of sentencing. <u>See</u> <u>State v. Baker</u>, No. 01C01-9711-CC-00537 (Tenn. Crim. App. Filed April 9, 1999, at Nashville).

**CONCLUSION**

We AFFIRM the trial court's judgment.

_____
JOHN EVERETT WILLIAMS, Judge

CONCUR:

_____
DAVID H. WELLES, Judge

-8-

_____
JOE G. RILEY, Judge