IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 11, 2004

## STATE OF TENNESSEE v. JEFFERY BRIAN PARKS

**Direct Appeal from the Circuit Court for Lincoln County
No. S0300042    Charles Lee, Judge**

_____

**No. M2003-02002-CCA-R3-CD - Filed August 30, 2004**

_____

The Appellant, Jeffery Brian Parks, appeals from the sentencing decision of the Lincoln County Circuit Court. In 2003, Parks pled guilty to two counts of sexual battery by an authority figure, two counts of incest, and two counts of statutory rape. After a sentencing hearing, the trial court sentenced Parks, as a Range I standard offender, to six years for each count of sexual battery by an authority figure and incest, both class C felonies, and to two years for each count of statutory rape, a class E felony. These sentences were ordered to be served concurrently in the Department of Correction. In this appeal as of right, Parks argues that the trial court erred in imposing excessive sentences with respect to each sentence and by ordering a sentence of total confinement rather than a less restrictive alternative. The State, on appeal, asserts that consecutive sentencing should be imposed by this court following _de novo_ review. Because the trial court failed to impose a sentence in accordance with our statutory sentencing scheme, we remand the case to the trial court for a new sentencing hearing to determine the length of the Appellant's sentences, the appropriateness of consecutive sentencing, and the Appellant's suitability for an alternative sentence.

### Tenn. R. App. P. 3; Judgment of the Circuit Court Reversed and Remanded

DAVID G. HAYES, J., delivered the opinion of the court, in which THOMAS T. WOODALL. J., joined; JOHN EVERETT WILLIAMS, J., filed a dissenting in part opinion.

Gregory D. Smith, Clarksville, Tennessee (on appeal); and A. Jackson Dearing, III, Assistant Public Defender (at trial and appellate co-counsel), for the Appellant, Jeffery Brian Parks.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Thomas E. Williams, III, Assistant Attorney General; W. Michael McCown, District Attorney General; and Ann L. Filer, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION

## Factual Background

On April 22, 2003, a Lincoln County grand jury returned a six-count indictment[1] against the Appellant, charging him with two counts of sexual battery by an authority figure, two counts of incest, and two counts of statutory rape of his fifteen-year-old step-daughter.[2]  On June 3, 2003, the Appellant entered an "open" plea of guilty to all counts as charged in the indictment.  At the guilty plea hearing, the State summarized the facts underlying these convictions as follows:

> On January 10th of 2003 Detective Joyce McConnell of the Lincoln County sheriff's department met with the child and interviewed her and she advised that beginning approximately two years previously and taking place at about once every one or two months for the entire interval ending just before Christmas of 2002, the defendant had come into her bedroom . . . and had laid down beside her in bed.

> He would remove her clothing and would then engage in sex with the child. On some occasions it was vaginal/penile penetration; on some occasions there was oral sex by the defendant on the child.

> The child was told by the defendant that he was doing this so that she would understand how to have sex and that it would keep her from getting into trouble with boys.

> After interviewing the child, the detective interviewed the defendant on January 15th of 2003.

> In that interview the defendant admitted to engaging in sex with his step-daughter.  He described it as having sex with her off and on.  He said that it had gone on for a period of only six months or slightly less than six months.

> In addition to the verbal statement to the detective, the defendant got on the computer there in the investigator's office and made a type-written statement where he admitted to the sexual activity.

> In it he blames the child as the initiator of the sex.

> But he does admit to engaging in sexual activity both penile/vaginal and oral.

---

[1]The Appellant was originally indicted on January 21, 2003.  The State obtained a superseding indictment in order to correct a "clerical error."

[2]The indictment charged that each of the three crimes occurred "on a day in August, 2000" and "on a day in December, 2002," resulting in six separate indicted offenses.

A sentencing hearing was held on August 5, 2003. Attached to the pre-sentence report were letters from the Appellant's father, aunt, and sister requesting that the court grant the Appellant an alternative sentence. Also attached to the pre-sentence report was information obtained from the Appellant's service records. The Appellant retired from the Army as a Master Sergeant and was a Captain in the Army Reserve. He currently receives 80% disability benefits due to service-related injuries from combat (Vietnam) and 100% disability through Social Security due to cancer.

A psycho-sexual evaluation was performed and entered into evidence. According to the report, the Appellant had a medium to high risk of re-offending, and the report recommended that "Mr. Parks may need a secure facility unless he begins to address his deviant attitude toward tolerance of sexual assault."

The Appellant's medical records indicate that on October 26, 2000, the Appellant was diagnosed with "squamous cell carcinoma of the oropharynx and oral cavity." He was treated with chemotherapy and radiation. A "progress note" dated March 12, 2002, indicated that the Appellant was "without evidence of recurrent disease." A letter from the Appellant's physician was attached to the pre-sentence report and contains the following information concerning the Appellant's medical condition:

> The side effects from the treatments have been profound. The radiation to his neck and head area has destroyed his saliva glands, his thyroid gland, and has resulted in the loss of all of his teeth. He cannot wear dentures due to the growth of bony spurs from his gums. He cannot undergo dental surgery because of the high risk of infection to the bone structure of his entire face. The various therapies have also left large amounts of scar tissue on his inner and outer throat, and have seriously affected his nervous system. Not only are his motor skills impaired but also his ability to recall information fluctuates greatly from day to day. Both short-term and recent memories have been affected. . . . Also, he has been under the care of a mental health staff for severe depression, which has as its target symptoms the inability to concentrate, high level of distractibility, and psychomotor retardation. . . . He requires adjunctive nutrient supplements on a daily basis, as he is incapable of swallowing properly.

On October 12, 2002, the Appellant reported "chronic pain in his lower back[,] . . . both legs[,] . . . right hip, both wrists, both knees, both shoulders, and his neck." The Appellant stated that he injured his back in a parachute jump in 1974 and reinjured it in a motor vehicle accident in 1980. He later fractured his right hip in another motor vehicle accident in 1990. He underwent right hip replacement surgery in 1997. The records also showed that the Appellant reported "he takes 12 hydrocodone per day despite the recommended dosage being 2/day" so that he can function.

Myrna Parks, the Appellant's wife and the mother of the victim, testified that she and the Appellant married when the victim was five-years-old. A victim impact statement was entered into evidence, wherein Mrs. Parks explained how the Appellant's actions had impacted her and her daughter. Mrs. Parks also testified that the Appellant repeatedly violated an order of protection by

contacting her via mail and phone. The court then asked if Mrs. Parks intended to divorce the Appellant. Mrs. Parks responded that she was "trying to make things as normal as possible" for her daughter and that she "eventually" planned on filing for a divorce. Mrs. Parks also stated that, if the Appellant was granted an alternative sentence, he would not be permitted to reside in the marital residence.

The Appellant testified that he was fifty-five years old and had served in the Army during the Vietnam conflict. He stated that, after twenty-three years of service, he was honorably discharged. His military decorations and awards, as shown on his service record, include: Army Service Ribbon, National Defense Medal, Vietnam Service Medal, Master Parachutist Badge, Combat Infantry Badge, Vietnam Campaign Medal, Army Commendation Medal (Gold), Vietnam Cross of Gallantry with Palm, Purple Heart, Good Conduct Medal, Overseas Ribbon, Ranger Tab, Special Forces Tab and Pathfinder Badge.

In 1974, the Appellant graduated from Methodist College in North Carolina, where he received a Bachelor of Science in Economics and Business Administration. The Appellant also received a Master of Science in Education from Drake University in 1986. The Appellant stated that he was a member of the Church of Jesus Christ of Latter Day Saints. He has served as a school teacher and high school assistant principal.

The Appellant expressed remorse for his actions and testified that he hoped to reconcile with his wife and would continue to provide financial support for the victim. The Appellant requested "leniency" from the court, stating that he was "a law abiding citizen," he had made a "serious mistake," he could "abide by the law" if granted an alternative sentence, and he could do a "better job" providing for his wife and daughter out of jail. According to the Appellant, if he was granted an alternative sentence, he intended to live near the VA Hospital in Murfreesboro.

At the conclusion of proof, the trial court sentenced the Appellant, as a Range I standard offender, to concurrent terms of two years for each statutory rape conviction and six years for each sexual battery by an authority figure and incest conviction. The trial court denied any form of alternative sentencing and ordered total incarceration. The Appellant now appeals.

**ANALYSIS**

The Appellant argues that his sentences as imposed by the trial court are excessive. When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (2003); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *Ashby*, 823 S.W.2d at 169.

In determining the Appellant's sentence, the trial court applied two enhancement factors: (2) The Appellant had a previous history of criminal behavior in addition to those necessary to establish the appropriate range and (16) The Appellant abused a position of private trust in a manner that significantly facilitated the commission or the fulfillment of the offense. Tenn. Code Ann. § 40-35-114(2), (16) (2003). The Appellant does not challenge the application of enhancement factor (2). We agree that the record adequately supports the application of this factor to each of the Appellant's convictions. *See State v. Hunter*, 926 S.W.2d 744, 749 (Tenn. Crim. App. 1995) (citing *State v. James L. Stevens*, No. 01C01-9304-CC-00164 (Tenn. Crim. App. at Nashville, Dec. 8, 1994) (defendant's prior criminal behavior may include evidence of sexual crimes committed but which were never charged or prosecuted).

The Appellant argues that the trial court improperly applied factor (16), abuse of a position of trust, to his convictions for incest and sexual battery by an authority figure because this enhancement factor is an essential element of the offenses. The Appellant does not challenge application of this factor to his convictions for statutory rape, and we agree that factor (16) was appropriately applied to the statutory rape convictions. Mrs. Parks testified that she and the Appellant married when the victim was only five years old. Furthermore, she stated, "My daughter's relationship with her natural father was not very positive. And so naturally she was looking for a father figure at that time. He filled that need for her as positive male role model." As the victim's "father figure," the Appellant occupied a position of trust. *State v. Jernigan*, 929 S.W.2d 391, 397 (Tenn. Crim. App. 1996); *see also State v. Jones*, 953 S.W.2d 695, 699 (Tenn. Crim. App. 1996). Children trust their custodial parents to care for and protect them. *Jones*, 953 S.W.2d at 699. The Appellant, however, abused that trust.

With regard to application of this factor to the Appellant's incest convictions, this court has consistently held that "the existence of a position of trust is not an essential element of the crime of incest because Tennessee Code Annotated section 39-15-302 prohibits sexual penetrations among a wide relations, including parent and child." *State v. Robert L. Miller*, No. 03-C01-9502-CR-00037 (Tenn Crim. App. at Knoxville, Sept. 25, 1997), *perm. to appeal denied*, (Tenn. 1998) (citing *State v. Billy Joe Pruitt*, No. O2C01-9507-CC-00193 (Tenn. Crim. App. at Nashville, Mar. 31, 1994); *see also State v. Clayton Eugene Turner, II*, (Tenn. Crim. App. at Knoxville, Oct. 6, 1999), *perm. to appeal denied*, (Tenn. 2000). Concerning application of factor (16) to the Appellant's convictions for sexual battery by an authority figure, the State concedes that it was error for the trial court to use this factor to enhance the Appellant's sentences. We agree that the trial court erred by applying this factor to enhance the sentences for sexual battery by an authority figure because it is an element of the offense. *See State v. Cleander Cleon Hartman, Jr.*, No. M200-02441-CCA-R3-CD (Tenn. Crim. App. at Nashville, Jan. 17, 2002). In conclusion, enhancement factor (16) was only applicable to the Appellant's convictions for statutory rape and incest.

Next, the Appellant contends that the trial court erred by not applying the following mitigating factors: (8) The Appellant was suffering from a mental or physical condition that significantly reduced his culpability for the offense and (13) he showed remorse. Tenn. Code Ann. § 40-35-113(8), (13) (2003). He also contends that the trial court should have given "more credit"

to his "excellent military record." With respect to mitigating proof, the trial court made the following findings:

> The Court does not feel that the evidence supports the defendant's urging. The Court considers that there was some factors that involved the taking of these drugs and pain killers and other things which diminished the defendant's conduct.

> The reason that the Court does not feel that that mitigating factor that the defendant was suffering from some mental condition that reduced the defendant's culpability is the extent and length of time involved in the perpetration of these crimes over essentially a two year period of time and the number of crimes that were involved.

> I think [the Appellant's] argument would carry much more weight with the Court if we were talking about one instance but where we are, according to the evidence, talking of at least five and perhaps eight separate instances of behavior, the Court does not believe that that mitigating factor could apply because there is not any evidence in the record that there was this mental or physical condition over that sustained two year period of time.

> The Court does consider that the defendant should be given the benefit of the so-called catch-all mitigating factor for two reasons as [he] has appropriately argued.

> The Court believes that that mitigating factor should be applied where the person has admitted their guilt; has pled guilty; has not subjected the victim of the offense to a long trial merely to - - in this case a traumatic trial, merely to gain some advantage.

> . . .

> The defendant from the very beginning has admitted . . . his guilt in this case and this Court feels that is a mitigating factor that the Court should consider.

> The Court also considers the fact that the defendant has an exemplary military history. . . . But given the fact that the defendant has obviously had a distinguished career in the military, serving our country, having only one blemish on his record - - this goes above and beyond. The Court will not consider this as a mitigating factor, but for this military history is not what you normally see even in those persons who have been in the military and who appear before the Court.

> It is significantly different and is deserving of the Court's consideration.

The trial court found that the non-statutory or catch-all mitigator, Tennessee Code Annotated section 40-35-113(13), applied because the Appellant pled guilty. This court has previously upheld consideration of guilty pleas as a mitigating factor. *See, e.g., State v. Jernigan*, 929 S.W.2d 391, 396 (Tenn. Crim. App. 1996) (defendant's pleading guilty and sparing the victims and their families from having to go to trial mitigated his sentence); *State v. William Ricky Wayne Herrell*, No. M1999-02475-CCA-R3-CD (Tenn. Crim. App. at Nashville, June 23, 2000) (trial court credited defendant for avoiding the expense and necessity of trial by pleading guilty); *State v. Stanley Dewayne Myers*, No. 03C01-9409-CR-00344 (Tenn. Crim. App. at Knoxville, Apr. 13, 1995). The record indicates that the Appellant entered an "open" plea of guilty to all counts as charged in the indictment and received no benefit from doing so; thereby, sparing the victim and her mother from having to go to trial. Accordingly, we conclude that the trial court was within its prerogative to apply this factor.

With regard to mitigation based upon the Appellant's "exemplary military history," the record indicates that the Appellant served in the Army for twenty-three years and was honorably discharged. He was in combat in Vietnam, where he was wounded. Moreover, he received numerous combat decorations and awards. The trial court properly found that the non-statutory mitigating factor was applicable to the Appellant's sentences. *See, e.g., State v. Clifford Leon Farra*, No. E2001-02235-CCA-R3-CD (Tenn. Crim. App. at Knoxville, Dec. 10, 2003), *perm. to appeal denied*, (Tenn. 2004) (in mitigation, the court took into consideration 54-year-old defendant's history of military service, good work record, and education); *State v. Charles Eugene Jones*, No. E2001-01639-CCA-R3-CD (Tenn. Crim. App. at Knoxville, Mar. 12, 2003) (trial court found that non-statutory mitigating factor was applicable to defendant's sentence, as he received an honorable discharge from the military); *State v. Rufus E. Neeley*, No. E2001-02243-CCA-R3-CD (Tenn. Crim. App. at Knoxville, Oct. 11, 2002) (trial court found as mitigating factors that defendant had a GED, a successful work record, and an honorable military record).

At this juncture in the sentencing process, *i.e.*, after finding applicable enhancing and mitigating factors, the trial court announced that it would defer determination of the respective sentence lengths until the issue of concurrent or consecutive sentences was resolved. The trial court explained that:

> Now, the Court believes that the proper procedure rather than finding the mitigating factor and two enhancing factors and applying those to each of these offenses and arriving at some amount of sentence for each offense and then turning to whether or not the defendant should be considered for consecutive sentencing or not, that the appropriate approach for the Court is to consider whether the defendant is to be considered for consecutive sentencing or not then to look at the case as a whole. The purpose of consecutive sentencing is to arrive at a number or years, given the nature of the case, that is in the best interest of society in terms of the length of the sentence if consecutive sentencing is to be considered.
>
> The Court does believe, however, that the Court is fully justified and rather than running these cases consecutively and giving the defendant the maximum

sentence on each of these offenses and running them all concurrently one with the other.

The end result of this incorrect procedure is that the Appellant now argues that, although the trial court found two non-enumerated mitigators applicable to all convictions, the Appellant received the maximum for each offense. Conversely, the State asserts that the trial court discarded established consecutive sentencing principles and, as a result, the Appellant erroneously received concurrent sentences. We agree that the trial court fashioned a sentence which is neither authorized by the Sentencing Act nor by established case decisions. Rather than determining the length of the Appellant's respective sentences and then proceeding to a consecutive sentencing analysis, the trial court arrived at what it determined the appropriate aggregate sentence to be and then proceeded in reverse.

Our sentencing laws provide that, at the conclusion of the sentencing hearing, the court shall first determine the appropriate range of sentence. Tenn. Code Ann. § 40-35-210(a), (b) (2003). The trial court found that two non-statutory mitigators applied but then imposed the maximum sentence for each conviction, concluding that, instead of reducing the length of each individual sentence, it would not impose consecutive sentencing. This is contrary to the structure of the Criminal Sentencing Reform Act of 1989. The Sentencing Commission Comments to Tennessee Code Annotated sections 40-35-113 and -114 state that enhancing and mitigating factors are required to be considered by the trial court in determining the sentence length. *See State v. Michael R. Blakely, Jr.*, No. M2001-01114-CCA-R3-CD (Tenn. Crim. App. at Nashville, Jan. 31, 2003) (trial court incorrectly found that the unusual circumstances of the offense should only be considered in determining whether to order consecutive sentences rather than to mitigate the length of the sentence). With regard to concurrent versus consecutive sentences, the trial court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:

> The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims[.]

Tenn. Code. Ann. § 40-35-115(b)(5) (2003); *see also State v. Lane*, 3 S.W.3d 456, 459-60 (Tenn. 1999).[3] Consecutive sentences should not routinely be imposed in criminal cases, and the aggregate

---

[3]We are cognizant of the Sentencing Commission Comments to Tennessee Code Annotated section 40-35-115 (2003), which permit consecutive sentences for multiple offenses. The comments note that the trial judge has, in addition to imposing consecutive sentences, "other available options, such as increasing the length of their sentences within the appropriate range depending on the presence of enhancing factors." The comments do not suggest, however, that the trial court should ignore applicable mitigators in the sentencing equation, and it would appear that the utility of this option would be extremely limited when mitigators are present.

(continued...)

maximum of consecutive terms must be reasonably related to the severity of the offenses involved. Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments. Thus, it is clear that whether a sentence will be imposed concurrently or consecutively, which is in large part a matter of judicial discretion, is not determined within the base sentence.[4]

Moreover, upon *de novo* review, we note that the trial court concluded that the Appellant "does not enjoy the presumption of alternative sentencing because of the number of offenses that have been committed against this child." In arriving at this conclusion, the court observed that:

> [W]hen one views 40-35-102 (3) (B) that the purposes of incarceration should be to restrain individuals of lengthy history of criminal conduct.
>
> The Court has already pointed out in this case, this behavior of the defendant was over a two year span of time.
>
> That it involved at least five to eight separate instances.
>
> That is a lengthy history of criminal conduct.

We find reliance upon Tennessee Code Annotated section 40-35-102(3)(B) misplaced for purposes of determining presumptive entitlement to alternative sentencing. The provisions of Tennessee Code Annotated section 40-35-102(5) and (6) govern entitlement to alternative sentencing. These sections specifically provide that only "convicted felons" who fall outside the parameters of subsection (6) may be removed from consideration for alternative sentencing. Because the Appellant was convicted as a Range I standard offender of class C and E felonies, he is presumed a favorable candidate for alternative sentencing upon remand.

---

[3](...continued)

---

[4]We find that *State v. Marshall*, 888 S.W.2d 786 (Tenn. Crim. App. 1994), is factually distinguishable from the present case. In *Marshall*, the trial court found that the defendant was eligible for both the maximum length of sentence and consecutive sentences. *Id*. at 787. Thus, in that case, the trial court was free to set the sentence length anywhere within the applicable range. However, in this case, the trial court conceded that the maximum sentence was not appropriate, although the maximum was imposed. Furthermore, the trial court imposed consecutive sentences in *Marshall*, whereas here, the trial court ordered concurrent sentences and, now, the State raises the issue of consecutive sentencing on appeal.

## CONCLUSION

For the above reasons, we reverse the judgment of the trial court and remand for a new sentencing hearing for purposes of determining the Appellant's respective length of sentences, alternatives to incarceration, and imposition of consecutive or concurrent sentences consistent with this opinion. Upon remand, the trial court is instructed to consider the application of enhancement factors in accordance with *Blakely v. Washington*, 542 U.S. ___, 124 S. Ct. 2531 (2004).

_____
DAVID G. HAYES, JUDGE