# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs December 15, 2004

## STATE OF TENNESSEE v. OTIS MILLER, III

**Appeal from the Criminal Court for Davidson County**
**No. 2002-B-1192 Monte Watkins, Judge**

------

**No. M2004-00707-CCA-R3-CD - Filed May 20, 2005**

------

The appellant, Otis Miller, III, pled guilty to four (4) counts of aggravated sexual battery. As a result of the guilty plea, the trial court sentenced the appellant to ten (10) years on each conviction and ordered the first two counts to be served concurrently and the last two counts to be served concurrently. The trial court ordered that the first two counts be served consecutively to the remaining two counts, for an effective sentence of twenty (20) years. On appeal, the appellant challenges the trial court's application of certain enhancement factors in violation of Blakely v. Washington, 542 U.S. ___, 124 S. Ct. 2531 (2004), and the trial court's decision to order consecutive sentences. Because our supreme court recently determined that Blakely has no application in Tennessee, we have reviewed the appellant's sentence de novo. Despite the trial court's improper application of several enhancement factors, we affirm the appellant's sentence because we determine that the existence of enhancement factor (16) justifies enhancement of the sentence from eight (8) to ten (10) years. We also affirm the trial court's decision to order consecutive sentences.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Emma Rae Tennent, (on appeal), and Jonathan F. Wing, (at trial), Assistant Public Defenders, Nashville, Tennessee, for the appellant, Otis Miller, III

Paul G. Summers, Attorney General & Reporter; Brent C. Cherry, Assistant Attorney General; Victor S. Johnson, District Attorney General; Bernie McEnvoy and Jennifer Tackett, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## Factual Background

In June of 2002, the appellant was indicted on eight (8) counts of rape of a child in violation of Tennessee Code Annotated section 39-13-522. In December of 2003, the appellant pled guilty to four (4) counts of aggravated sexual battery. At the guilty plea hearing, the prosecutor made the following offer of proof with regard to the facts underlying the charges:

Your Honor, the victim in this case is [a] young girl named [B.M.].[1] She's the defendant's daughter. Her date of birth is April 17th, 1996. She is now seven years old. [B.M.] is the child of the defendant, . . . and Tawana Smith. The defendant . . . and Smith were married up until approximately August of 2001. At that time, they separated and [B.M.] went to live with her mother. Soon thereafter the defendant . . . and Tawana Smith set up a new form of visitation where [B.M.] spent most of the weekends, Friday night and Saturday night and part of Sunday with her father, the defendant.

That arrangement continued through October of 2001, November of 2001, December of 2001, and a portion of January, 2002. That is when these offenses occurred.

[B.M.] returned from a visit with the defendant on January 19th of 2002. Sometime after that her mother was giving her a bath and [B.M.] talked about "hunching" or "humping." Her mother asked her where she got that word and she said from her dad.

[B.M.'s] mother did the right thing, she contacted the - the Department of Children's Services and Our Kids Clinic. [B.M.] was interviewed by a case manager from the Department of Children's Services. She told him that the defendant, her father, performed oral sex on her, licking her vagina; that he - he made her perform oral sex on him, licking his penis. She said, also, that - that he rubbed his penis against her vagina; that he put his penis inside her vagina. She said this happened whenever she went to her father's home.

---

[1] It is the policy of this Court not to identify the minor victims of sexual abuse.

Soon after that[,] [B.M.'s] mother refused to allow [B.M.] to see the defendant any more. The defendant went to see a licensed clinical social worker on his own initiative. He told the social worker he had - had been engaging in inappropriate contact with his daughter. He said that when his wife was pregnant he prayed the child would be a boy because he wouldn't do things to a boy.

Uh- [B.M.] had an examination at Our Kids Center and the examination showed no injury to her genitals.

As the investigation continued the defendant was interviewed by Detective Rob Carrigan of the Metro Police Department. Uh - in the course of that interview, the defendant made some admissions. He said that what [B.M.] says is true. He denied penetrating her vagina with his penis. But he admitted that there was contact with his "humping" or "hunching" her, rubbing his penis against her vagina.

The State's attorneys have met with [B.M.] on a number of occasions. We believe that if we had gone to trial she would testify as to the following: That when she visited her dad . . . he would wake her at night and he would perform oral sex on her. He would say, "Now, you have to do me," and he would make her perform oral sex on him.

He would then rub his penis against her vagina. She's described it that he rubbed it in the middle and it felt like he was trying to squeeze it in. She said that - that he did this with her on top of him and with him on top of her. She said this happened more than one time.

Several months later, the trial court held a sentencing hearing where the court heard testimony from several people, including the victim, the victim's mother, a detective who took a statement from the appellant, a social worker who interviewed the victim and a counselor who met with the appellant. At the conclusion of the sentencing hearing, the trial court determined that one of the mitigating factors submitted by the appellant applied, that the "appellant had a stable home and strong family ties that will provide support to him in an attempt to rehabilitate him," but chose to give that factor little weight. The trial court determined that several enhancement factors applied: (1) the victim was particularly vulnerable because of her age, Tenn. Code Ann. § 40-35-114(5); (2) the personal injuries inflicted upon the victim were particularly great, Tenn. Code Ann. § 40-35-114(7); (3) the defendant had no hesitation about committing a crime when the risk to human life was high, Tenn. Code Ann. § 40-35-114(11); and (4) the defendant abused a position of private trust, Tenn. Code Ann. § 40-35-114(16). At the conclusion of the hearing, the trial court sentenced the appellant to ten (10) years on each count. The trial court then determined that counts one and two should be served concurrently and counts five and six should be served concurrently, but consecutive to counts one and two for a total effective sentence of twenty (20) years.

On appeal, the appellant suggests that the trial court erred in "imposing enhanced sentences on the defendant's aggravated sexual battery convictions and in ordering that two of those convictions be served consecutively to one another."

## Sentencing

On appeal, the appellant challenges the trial court's application of enhancement factors (5), (7), (11) and (16). The State concedes that the trial court erred in applying factors (5), (7) and (11), as they were unsupported by the record. However, the State argues that the trial court's application of factor (16) was proper and that without specifically listing the appellant's prior criminal history as an enhancement factor, the trial court properly considered it for enhancement.

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. Tenn. Code Ann. §§ 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." Ashby, 823 S.W.2d at 169.

The appellant herein argues that there was no proof of the enhancement factors, as enumerated in Tennessee Code Annotated section 40-35-114, and that there were many mitigating factors that should have applied. The appellant also argues that constitutionally only a jury, not the trial court, was permitted to make the determination of the presence of the enhancement factors. The appellant cites Blakely v. Washington, 542 U.S. ___, 124 S. Ct. 2531 (2004), to support this argument.

The Tennessee Supreme Court recently determined that Blakely did not announce a new rule of law and that "the Tennessee Criminal Sentencing Reform Act does not authorize a sentencing procedure which violated the Sixth Amendment right to jury trial." State v. Gomez, ___ S.W.3d ___, No. M2002-01209-SC-R11-CD, 2005 WL 856848, at *17 n.16 (Tenn. Apr. 15, 2005). In Gomez, the court determined that despite the ability of trial judges to set sentences above the presumptive sentence based on the finding of enhancement factors neither found by a jury or admitted by a defendant, Tennessee's sentencing structure does not violate the Sixth Amendment and does not conflict with the holdings of Blakely v. Washington,542 U.S. ___ , 124 S. Ct. 2531 (2004), United States v. Booker, ___ U.S. ___, 125 S. Ct. 738 (2005), or United States v. FanFan, the case consolidated with Booker, because "[t]he Reform Act [of Tennessee] authorizes a discretionary, non-mandatory sentencing procedure and requires trial judges to consider the

principles of sentencing and to engage in a qualitative analysis of enhancement and mitigating factors . . . all of which serve to guide trial judges in exercising their discretion to select an appropriate sentence within the range set by the Legislature." Gomez, ___ S.W.3d at ___, 2005 WL 856848, at *27. Thus, in order to determine a defendant's sentence, a trial court starts at the presumptive sentence, enhances the sentence within the range for existing enhancement factors, and then reduces the sentence within the range for existing mitigating factors in accordance with Tennessee Code Annotated section 40-35-210(e). No particular weight for each factor is prescribed by the statute; the weight given to each factor is left to the discretion of the trial court as long as it comports with the sentencing principles and purposes of our Code and as long as its findings are supported by the record. See State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995).

In the case herein, the appellant pled guilty to four (4) counts of aggravated sexual battery, a Class B felony. Tenn. Code Ann. § 39-13-504(b). The appellant is a Range I, standard offender, so the range of punishment is eight (8) to twelve (12) years. Tenn. Code Ann. § 40-35-112(a)(2). Unless there are enhancement factors present, the presumptive sentence to be imposed is the minimum in the range for a Class B felony. Tenn. Code Ann. § 40-35-210(c).

The trial court sentenced the appellant to ten (10) years for each conviction, the middle of the sentencing range for his convictions and two (2) years above the presumptive sentence for a Class B felony, based on the application of the following enhancement factors: (1) the victim of the offense was particularly vulnerable because of her age, Tenn. Code Ann. § 40-35-114(5); (2) the personal injuries inflicted upon the victim were particularly great, Tenn. Code Ann. § 40-35-114(7); (3) the appellant had a lack of hesitation about committing a crime where the risk to human life was high, Tenn. Code Ann. § 40-35-114(11); and (4) the appellant abused a position of private trust, Tenn. Code Ann. § 40-35-114(16).

After a review of the record, we agree with both the appellant and the State that the trial court's application of enhancement factors (5), (7), and (11) was improper. While there was no dispute regarding the victim's young age at the time of the offenses, the Tennessee Supreme Court has held that particular vulnerability arises only when the victim is "incapable of resisting, summoning help, or testifying against the perpetrator." State v. Adams, 864 S.W.2d 31, 35 (Tenn. 1993). Vulnerability is "a factual issue to be resolved by the trier of fact on a case by case basis." Id. The record reflects that, at the time of the offenses, the victim was five years old. The trial court, other than stating that this factor was applicable, made no further findings. It appears that the trial court applied this factor based solely on the victim's age. "A victim's youth does not necessarily equate with vulnerability." State v. Lewis, 44 S.W.3d 501, 505 (Tenn. 2001); see also State v. Poole, 945 S.W.2d 93, 98 (Tenn. 1997) (determining that "unless the State produces evidence of physical or mental limitations at the time of the offense, along with proof of the victim's age, it cannot be presumed that the victim was *particularly* vulnerable based solely on her age"). Without evidence of particular vulnerability in the record, we conclude that the trial court erred in applying enhancement factor (5).

The trial court applied enhancement factor (7) based on the victim's "mental injuries." The record includes the testimony of Lisa Dupree, a social worker at Our Kids Center who interviewed the victim on one occasion. Dupree testified that the victim suffered from "some arrested development" and would probably have "emotional difficulties" if her issues were not addressed. The victim's mother also testified. She claimed that the victim did not appear to be suffering from "any sort of lasting deficit from this abuse" and that the victim was a good student. In order to appropriately apply enhancement factor (7), the State was required to introduce "specific and objective evidence demonstrating how the victim's mental injury is more serious or more severe than that which normally results from this offense." State v. Arnett, 49 S.W.3d 250, 260 (Tenn. 2001). While the record certainly indicates that the victim has suffered both physical and emotional damage as a result of the offenses, the State did not introduce evidence that the victim's injuries were "more serious" or "more severe" than those which ordinarily result from this serious offense. Thus, the trial court erred in applying enhancement factor (7).

The trial court applied enhancement factor (11) based on the appellant's prior sexual practices. The trial court stated that the appellant has a "possible sexual disease that could have caused death" and determined that the appellant was "well aware of the fact that he had had sexual relations with women outside of his marriage as well as prostitutes." There was testimony in the record from the appellant's wife indicating that the appellant often slept with prostitutes during their marriage. The trial court may consider this factor when the defendant endangers the lives of people other than the victim. State v. Dean, 76 S.W.3d 352, 381 (Tenn. Crim. App. 2001). The record does not indicate that anyone other than the victim was endangered. The trial court improperly applied this enhancement factor.

The trial court applied enhancement factor (16) based on the existence of a father/daughter relationship between the victim and the appellant. The facts as given by the prosecutor at the guilty hearing, and admitted by the defendant, noted that the victim was the appellant's daughter. Further, at the sentencing hearing, prior to the imposition of the sentence, the appellant made a sworn statement in which he stated that he regretted the things he had done to his daughter and wanted to apologize to her. This Court has determined that the existence of a father-daughter relationship between a defendant and a victim justifies the application of enhancement factor (16). See State v. Hayes, 899 S.W.2d 175, 187 (Tenn. Crim. App. 1995). Thus, the trial court did not err in applying enhancement factor (16). Accordingly, we determine that the appellant's sentence of ten (10) years on each conviction for aggravated sexual battery is justified based solely on the application of enhancement factor (16).

The appellant also complains that the trial court did not apply the many mitigating factors that the appellant argued should have applied to his sentence. Specifically, the appellant complains that the trial court should have applied the following mitigating factors: (1) the appellant's conduct neither caused nor threatened serious bodily injury, Tenn. Code Ann. § 40-35-113(1); (2) the appellant showed remorse for the crime; and (3) the appellant has been a model inmate while incarcerated. The appellant argues that the last two proposed mitigating factors should apply under the catch-all mitigating factor found in Tennessee Code Annotated section 40-35-113(13).

At the conclusion of the sentencing hearing, the trial court determined that mitigating factor (1) did not apply because the appellant's conduct "did threaten serious bodily injury because of the potential of what disease [the victim] may have incurred as a result of this sexual conduct." The testimony at the sentencing hearing indicated that the appellant often slept with prostitutes during the time that he abused his daughter. The trial court next determined that the fact that the appellant was a "model inmate" had "nothing to do with the offense that he was charged with." The trial court also stated that it "did not believe . . . [the appellant was] remorseful for his conduct" but rather "remorseful for having been caught." The trial court was able to observe the appellant and evaluate his demeanor and credibility. See State v. Kelly, 34 S.W.3d 471, 481 (Tenn. Crim. App. 2000). We conclude that the record supports the trial court's refusal to consider these mitigating factors. This issue is without merit.

## Consecutive Sentencing

The appellant complains that the trial court erred in ordering him to serve the sentences in counts one and two consecutive to the sentences in counts five and six, for a total effective sentence of twenty (20) years because the record does not support the application of Tennessee Code Annotated section 40-35-115(b). The State argues that consecutive sentencing was warranted.

A trial court may impose consecutive sentencing upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists. This section permits the trial court to impose consecutive sentences if the court finds, among other criteria, that the "defendant is convicted of more than one (1) criminal offense." Tenn. Code Ann. § 40-35-115(a). One of the provisions allowing consecutive sentencing provides that consecutive sentencing is warranted if:

> [t]he defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical, and mental damage to the victim or victims.

Tenn. Code Ann. § 40-35-115(b)(5).

Further, "consecutive sentences cannot be imposed unless the terms reasonably relate to the severity of the offenses committed and are necessary in order to protect the public from further serious criminal conduct by the defendant." State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995). The decision to impose concurrent or consecutive sentences, however, is a matter entrusted to the sound discretion of the trial court. State v. Blouvet, 965 S.W.2d 489, 495 (Tenn. Crim. App. 1997).

In the case herein, the trial court stated the following as justification for ordering consecutive sentences:

-7-

Now, as to consideration of consecutive sentencing. The standard is the preponderance of the evidence standard. In this case, factors to be considered: The defendant is convicted of two or more statutory offenses involving sexual abuse of a minor, with consideration of aggravated circumstances. I find that to be the case. The time span of the defendant's undetected sexual activity: I believe, or the Court believes, that it was a lengthy time period, particularly for a child the age of five. The nature and the scope, another factor of the sexual offenses, I find that to be a factor, because of the various acts committed by the defendant, and the extent of the residual, physical, or mental damage to the victim. That calls for some speculation, but the Court finds that there will be some residual effect and damage as a result of this relationship.

Which now leaves me with: How do I run - - so, I must say that consecutive sentences are appropriate. It is a matter of how do I run these particular consecutive sentences. I am taking into consideration the defendant's mother and father, the defendant's ex-wife, and the defendant's daughter. But, I am, also, taking into consideration my role, as having to protect society. And I think that society needs to be protected from individuals such as [the appellant]. But he is being given some consideration.

At the conclusion of the hearing, the trial court ordered the appellant to serve the sentences in counts one and two consecutive to the sentences in counts five and six, for a total effective sentence of twenty (20) years. From the trial court's comments at the sentencing hearing, it is apparent that the trial court found all four of the considerations in section 40-35-115(b) weighed in favor of consecutive sentencing with respect to the convictions involving the defendant's daughter.

On appeal, the appellant cites to State v. Hayes, 899 S.W.2d 175 (Tenn. Crim. App. 1995), for the proposition that consecutive sentencing is inappropriate in this case. In Hayes, the defendant, convicted of sexual battery for french kissing his daughter, challenged the imposition of consecutive sentencing. This Court weighed the factors listed in subsection 115(b)(5) against one another; whereas one factor weighed in favor of consecutive sentencing, remaining factors militated against it:

The state stresses the fact that the victim was the defendant's daughter. However, the circumstances in this case relating to the remaining factors to be considered militate against the use of subsection 115(b)(5). There was no significant time span of undetected sexual activity, the nature of the criminal conduct was nonaggravated, and the extent of residual damage to the victim caused by the conduct is not sufficiently shown.

Id. at 187. Thus, the Court modified to provide for concurrent sentencing. Id.

In our view, the reliance on Hayes is misplaced. As applied in this case, the factors listed in subsection 115(b)(5) do not militate against consecutive sentencing; they weigh in favor of it.

First, our review of the record reveals that the appellant was convicted of "two or more statutory offenses involving sexual abuse of a minor" as required by Tennessee Code Annotated section 40-35-115(b)(5). The appellant pled guilty to four (4) counts of the aggravated sexual battery of his daughter.

At the time of the abuse, the victim's mother and the appellant were separated. The abuse took place during weekend visitation with the appellant that began in approximately late October or early November of 2001 and continued until January of 2002. The relationship between the victim and the appellant of father and daughter clearly weighs in favor of consecutive sentencing. The appellant was entrusted with the care and well-being of his daughter. See, e.g., State v. Jernigan, 929 S.W.2d 391, 394-98 (Tenn. Crim. App. 1996); State v. Patrick Kossow, No. M2000-01871-CCA-R3-CD, 2001 WL 957457, at *8 (Tenn. Crim. App., at Nashville, Aug. 23, 2001); State v. Harold Lynn Woodruff, No. 01C01-9809-CR-00361, 1999 WL 820872, at *4 (Tenn. Crim. App., at Nashville, Oct. 13, 1999).

At the time of the abuse, the victim was five (5) years old. While the duration of the abuse was short, lasting approximately three (3) months, this Court has previously determined that abuse taking place over the course of a few months justified consecutive sentencing, especially in the case of young victims. See, e.g., State v. Lane, 3 S.W.3d 456, 460 (Tenn. 1999); State v. Leonard Catalano, No. M2001-03039-CCA-R3-CD, 2003 WL 21877933 (Tenn. Crim. App., at Nashville, July 9, 2003), perm. app. denied (Tenn. Nov. 24, 2003); State v. Jerry McGaha, No. E2001-01547-CCA-R3-CD, 2002 WL 499273, at *1-3 (Tenn. Crim. App., at Knoxville, April 3, 2002); State v. Joseph E. Suggs, No. M1999-02136-CCA-R3- CD, 2000 WL 1521481, at *3 (Tenn. Crim. App., at Nashville, Oct. 4, 2000); State v. Richard L. Meyer, No. 01C01-9902-CC-00034, 1999 WL 994046, at *2 (Tenn. Crim. App., at Nashville, Nov. 3, 1999); Harold Lynn Woodruff, 1999 WL 820872, at *5. This factor also weighs in favor of consecutive sentencing.

Further, the "nature and scope" of the appellant's "sexual acts" with the victim was extensive. There was testimony at the sentencing hearing that the victim was not only exposed to a video tape of the child's parents engaged in sexual activity, but was forced to perform fellatio on her father, was forced to receive cunnilingus from her father, and was forced to acquiesce while her father was "hunching" her, an act demonstrated by the victim at the sentencing hearing using dolls. In his interview with authorities, the appellant admitted that he "hunched" the victim by rubbing his penis against the victim's vagina in an action simulating intercourse. Obviously, the appellant's conduct was reprehensible and repulsive. We determine that this factor weighs heavily in favor of consecutive sentencing.

Finally, the trial court determined that, while "speculative," there would be some "residual [emotional] effect and damage" as a result of the victim's relationship with her father that would justify consecutive sentencing. The testimony at the sentencing hearing regarding the emotional

impact of the abuse to the victim came from Lisa Dupree, a social worker at the Our Kids Clinic, who interviewed the victim prior to her medical-legal exam. The testimony was admitted over objection of the appellant that the long-term effects of childhood sexual abuse "range from substance abuse, eating disorders, to more serious mental health disorders, like mental illness." Dupree testified that the victim in the case herein "regressed back to a point in development where she cannot make logical connections" and suffered from "some arrested development." Dupree came to this conclusion based in part on her interaction with the victim during the interview. Apparently, after Dupree explained to the victim that a doctor would be examining the victim's genital area, the victim asked whether the doctor would "hunch" her. Dupree opined that there would "come a time when [the victim] will have emotional difficulties if this is not addressed, because it is very clear that she is no longer able to make sense of the world around her." Dupree stated that it would concern her if the child was doing either exceptionally well or extremely poorly in school. The victim's mother testified that she had not seen any changes in the victim since the abuse and that the victim was doing well in school. The mother also admitted that she had not told the victim that her father was in jail or that his actions constituted a very serious crime. While concrete evidence of "mental damage" was sparse, we nevertheless conclude that the trial court properly found, by a preponderance of the evidence, that consecutive sentences were warranted where the considerations found in Tennessee Code Annotated section 40-35-115(b)(5) weigh in favor of consecutive sentencing. This issue is without merit.

### Conclusion

For the foregoing reasons, we affirm the appellant's sentences and affirm the trial court's decision as to the manner of service of the sentences, including consecutive sentencing.

_____
JERRY L. SMITH, JUDGE